**DIRECT MAIL SERVICES, INC., a Colorado corporation, and Marvin W. Shaver, a/k/a Wally Shaver, Plaintiffs-Appellants,**

**The State of Colorado, The Colorado Department of Highways; Jack Kinstlinger, the Executive Director of the Department of Highways; E.N. Haase, Chief Engineer of the Department of Highways; Richard J. Brasher, District Engineer for the Department of Highways; Ralph Wyatt, Senior Right of Way Agent for the Department of Highways; and Kenneth W. Acker, Staff Rights of Way Manager for the Department of Highways, Defendants-Appellees,**

v.

**Keith E. BEST, Third-Party Defendant-Appellee.**

**No. 83–1379.**

United States Court of Appeals, Tenth Circuit.

March 8, 1984.

William W. Talbott, Talbott & Alsop, L.C., Webster Springs, W.Va. (Jeffrey R. Edelman, Edelman, Koransky, McCullough & Segall, P.C., Denver, Colo., with him on the briefs), for plaintiffs-appellants.

Jeffery B. Stalder, Hall & Evans, Denver, Colo., for defendants-appellees.

Harold D. Torgan, Torgan & Associates, Denver, Colo., for third-party defendant-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Direct Mail Services, Inc., a Colorado corporation and Marvin W. Shaver, owner of the corporation, sued the United States, the State of Colorado, and certain of their representatives seeking damages arising out of the condemnation of property on which they had a lease.[1]

One Keith E. Best was the lessor and former owner, who leased the property to Shaver, pursuant to a written lease agreement dated October 31, 1977. The agreement was executed contemporaneously with the sale of Direct Mail Services, Inc. by Best to Shaver. Direct Mail Services had been owned by Best and operated out of a building on the property here in question. The plaintiffs contend that the low rent in the lease agreement was an inducement for Shaver to purchase the business.

The same day that the lease agreement was executed, an addendum dealing with the effect of any future condemnation of the property was also executed. It is this addendum that is the subject of the action, and the provisions of Paragraph 12 of the contract are brought into question. The parties' dispute involves differing interpretations of a subsection of Paragraph 12 of the addendum. Relevant portions of the paragraph state:

> 12. *Effect of condemnation.* Rights and duties in the event of condemnation are as follows:

---

1. Soon after commencement of the action, the United States and its only named representative were dismissed from the action without prejudice on plaintiffs' motion.

(1) If the whole of the demised premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, this lease shall vest thereby in that authority and the rent reserved hereunder shall be apportioned and paid up to that date.

\* \* \* \* \* \*

(3) In the event of any taking or condemnation the resulting award of consequential damages with regard to the buildings and premises shall belong to the lessor. Awards of consequential damage for major improvements effected by mutual agreement between lessor and lessee and such awards for loss of lessee's business, moving expenses, etc., shall belong to the lessee. Lessee shall have the right to pursue settlement from the condemning authority as a separate action from any claim the lessor might negotiate with said condemning authority.

All parties agree that subsection (1) provides for the termination of the lease upon the State's condemnation of the property; however, plaintiffs allege that subsection (3) evidences the clear intent of the parties to reserve to plaintiffs a share in any condemnation award to the extent of their leasehold interest. In support of this contention, plaintiffs argue, it is inconceivable that at the time the lease agreement was executed and condemnation was foreseeable they did not intend to protect their favorable rent rate by reserving a right to participate in a condemnation award.

In opposition, the State of Colorado argues that the subsection waived any right plaintiffs may have had to participate in a condemnation award after termination of the lease. Citing decisions in the other jurisdictions interpreting similar language, the State of Colorado argues that to the extent the lease reserved any interest after termination, that interest is separate and apart from any claims derived from the loss of the leasehold interest in the condemned property. Instead, the interest is limited to an award for moving expenses and the loss of plaintiffs' business. The

State then concludes that since it reimbursed plaintiffs for moving expenses and since no claims for loss of business were alleged, the State is not liable to plaintiffs.

It is important to note that the lease had quite a period to run before it terminated. It ran until December 31, 1987. The State of Colorado acquired the property from Best after negotiating and as a result of threatening condemnation. This was on April 26, 1979. The plaintiffs entered into a lease agreement with the State of Colorado effective July 1, 1979. Later they notified the State of their intent to relocate and vacate the property on or about August 25, 1980. The State of Colorado compensated the plaintiffs for moving expenses in the amount of $25,000.00.

The reason that the plaintiffs claim that it was necessary to relocate was because the State of Colorado was planning to destroy the building on the property. This is their claim. An additional claim is that their new location was leased at a higher rent and that the State of Colorado refused to compensate them for the loss of the fair market value of their leasehold and for the payment of the increased rental at their new location. Consequently, plaintiffs filed the present action, alleging four distinct claims for relief: *First*, that the State of Colorado's acquisition of the property constituted a wrongful taking of the leasehold without just compensation, contrary to the federal and state constitutions; *second*, that the State's acquisition constituted trespass on plaintiffs' leasehold estate; and *third* and *fourth*, that the State's acquisition constituted deprivation of plaintiff's property rights, contrary to 42 U.S.C. §§ 1983 and 1985.

The State of Colorado subsequently brought an action as third party plaintiffs against Best, the owner of the subject property at the time of condemnation. The State's argument was that plaintiffs must look only to Best for any damages resulting from the loss of the leased property. However, plaintiffs did not amend their complaint to add Best as an adverse party and allege a direct claim against him.

Each and every one of the parties filed a motion for summary judgment. The district court, 557 F.Supp. 851 (D.C.Colo.1983), granted summary judgment in favor of the State of Colorado on all four claims of plaintiffs' complaint, and in favor of Best on all claims of their third-party complaint. The action was then dismissed.

■ The appeal of the plaintiffs seeks review of the court's summary judgment dismissing their claim for relief against the State for the wrongful taking of their leasehold. They request this court to (1) set aside the district court's summary judgment in favor of defendants; (2) grant plaintiffs' motion for summary judgment and inverse condemnation; and (3) remand the case to the district court for determination of damages. The district court held that notwithstanding plaintiffs' alleged intention to reserve a share of the condemnation award, any such contractual reservation is not effective as a matter of law against the State. The district court applied Colorado precedent holding that once the reasonable market value of the property acquired through the exercise of the State's eminent domain authority has been established, the apportionment of that amount among persons claiming a share thereof is not the concern of the State. We cannot quarrel with that determination by the trial judge. *See Vivian v. Board of Trustees of Colorado School of Mines,* 152 Colo. 556, 383 P.2d 801 (1963).

■ We are of the same opinion as the district court in its ruling that the State of Colorado is not responsible to the plaintiffs for the value of the lease; that any right that the plaintiffs might have must be against the third-party defendant Best.

■ The plaintiffs assert that had there been a statutory condemnation proceeding, their interest would have been fairly calculated and awarded to them and this lawsuit would have been avoided. It is to be noted that Best agreed after negotiations to sell the property to the State, for $154,235.00. Prior to a condemnation proceeding under these circumstances there would have to have been a good faith effort to negotiate with the property owners

and a resultant failure to agree upon compensation since these are prerequisites to the commencement of a statutory condemnation proceeding in Colorado. *See City of Thornton v. Farmers Reservoir and Irrigation Company,* 194 Colo. 526, 575 P.2d 382 (1978); Colo.Rev.Stat. § 38–1–102 (1973). Thus, the commencement of condemnation proceedings would have been improper. The record clearly reveals that Best sold the property "solely under threat of condemnation, but did not seek or solicit the sale." An attempt by plaintiffs to suggest that the transaction constituted a simple sale rather than an exercise of the State's eminent domain authority is not supported by any evidence that we have seen.

■ It is neither alleged, nor is it supported by any evidence, that the State failed to award the fair market value, and that is all that the Colorado law demands. Colorado follows the rule that property acquired by eminent domain must be valued according to an undivided fee method. *Montgomery Ward & Co., Inc. v. City of Sterling,* 185 Colo. 238, 523 P.2d 465, 467–68 (1974). This undivided fee method provides for state payment of the entire value of the land as a whole, and it assumes for the purpose of valuation that the property belonged to one person. *Montgomery Ward, supra,* 523 P.2d at 468; *Vivian, supra,* 383 P.2d at 804, citing *State ex rel. McCaskill v. Hall,* 28 S.W.2d 80 (Mo.1930). In *McCaskill* the Missouri court stated the principle that ordinarily the aggregate value of all the distinct interests and estates in a parcel of property cannot exceed the value of the property as a whole; that whatever special advantage is secured by one interest must be taken from another. *McCaskill, supra,* 28 S.W.2d at 81.

We note that the plaintiffs do not allege nor is there any evidence to support an allegation that the aggregate value of the property in this case was enhanced by the automatically terminated leasehold. The plaintiffs merely allege that the acquisition of the property resulted in their loss of a favorable lease which rent was substantially below the fair market rent for comparable property. *See* Brief in Support of

Plaintiffs' Motion for Summary Judgment, Record on Appeal, at 122–24. If the allegation is established, a determination an appellate court is not empowered to conclude, this advantage to the lessee is secured at the expense of the lessor who was encumbered with a lease providing for rent below the fair market value of comparable property.

■ Hence, since the State paid the fair market value of the property, under the Colorado precedent of *Vivian* the apportionment of the award between plaintiffs and Best is of absolutely no concern to the State.[2] The value of the leasehold was considered in determining the fair market value of the property and, therefore, plaintiffs have no right to a separate award from the State.[3]

If we consider this case in its best light, it does not seem possible for the plaintiffs to maintain a claim against the State. If they have any action here for the value of their lease, their action would be against the lessor and not the State for a proper apportionment of the condemnation award.[4] It is conceivable that such an action could be maintained against the lessor Best. After all, he is the holder of the entire recov-

ery. That question is not before this court; however, it does serve to illustrate that contrary to their suggestion, plaintiffs may have a remedy for the alleged wrong.

The judgment of the district court is affirmed.

---

2. The rationale and purpose behind this rule is obvious. The various interests and estates of ownership of property today are so numerous and complex that the acquisition of the property for public benefit would be delayed or halted to await settlement of the competing claims of diverse interest holders if the State were compelled to segregate and value separately each particular interest in the property. *See McCaskill, supra,* 28 S.W.2d at 83. In fact, during oral argument plaintiffs acknowledged that a possible consequence of a ruling by this court in their favor would be that the State may be required to pay twice for the leasehold on the required property—once in the payment based on fair market value of the property and again to the lessee in a separate action. This seems plainly contrary to the rationale and purpose behind the undivided fee method applied in Colorado and adoption of plaintiffs' position would put the public at the mercy of every private property holder. Persons may not by contract or otherwise restrict the State's exercise of its lawful eminent domain authority. *See Smith v. Clifton Sanitation District,* 134 Colo. 116, 300 P.2d 548 (1956).

3. This is not meant to imply that in no event may the lessee maintain an action against the

State for an unlawful taking after an award to the lessor. That broad issue is not before this court. The facts of this case are more limited; the condemnation award in the instant case was for the fair market value of the property, including a consideration of the value of the leasehold. Therefore, the issue is not whether a lessee may maintain an action against the State for an unlawful taking without just compensation, but rather, whether a lessee may maintain an action against the State for apportionment of the just compensation after payment to the lessor.

4. Best was aware that the compensation awarded by the State included a portion for the lessee. The Agreement signed with the State explicitly stated:

4. The compensation herein provided includes full compensation for his interest, either present or future *and the interest of lienors and lessees of the vendor* and any and all interest, legal or equitable (except minerals reserved above) which are or may be outstanding * * *.

Record on Appeal, at 108 (emphasis added).