ADMINISTRACIÓN DE TERRENOS DE PUERTO RICO, demandante y peticionaria, *v.* NERASHFORD DEVELOPMENT CORPORATION y EMPRESAS YOGUI, INC., demandadas y recurridas.

*Número:* CE-92-387 *Resuelto:* 29 de agosto de 1994

*William Núñez Colón* y *Pedro A. Román Quiles*, abogados de la parte demandante y peticionaria; *Víctor M. Sánchez Fernández*, abogado de la parte demandada y recurrida.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

Recurre ante nos la Administración de Terrenos de Puerto Rico (en adelante la Administración) para que revisemos una resolución mediante la cual el tribunal de instancia resolvió que el Gobierno está obligado a depositar como justa compensación, para beneficio del dueño y del arrendatario de una finca expropiada, una cantidad mayor al justo valor en el mercado de la finca. Revocamos.

I

La Administración, mediante un procedimiento de expropiación forzosa ante el Tribunal Superior, adquirió el dominio sobre una finca en Santurce. Incluyó —como partes con interés— al dueño de la finca, Nerashford Development Corporation (en adelante Nerashford) y a la arrendataria de la finca, Empresas Yogui, Inc. (en adelante Yogui). Como compensación, la Administración depositó trescientos ochenta y ocho mil dólares ($388,000).[1]

---

[1] De los autos no se desprende que la Administración de Terrenos de Puerto Rico, al solicitar la consulta de ubicación en la Junta de Planificación, le notificó a Nerashford Development Corporation sobre el proyecto de expropiación que próximamente iniciaría.

El tribunal de instancia oportunamente emitió una resolución en la que declaró que el dominio absoluto de la finca había quedado investido en la Administración y ordenó su entrega inmediata a ésta. El foro de instancia expresó, además, que la cuantía y distribución de la justa compensación, para las personas con derecho a ella, se determinaría mediante una sentencia que sería dictada con posterioridad.

Luego de haber efectuado retiros de la suma depositada inicialmente por la Administración,(²) Nerashford solicitó que le fuera entregado el resto del dinero depositado. El tribunal, luego de verificar que la solicitud de Nerashford se hubiera notificado a Yogui, ordenó que se expidiera el cheque correspondiente a favor de Nerashford.

Posteriormente, Yogui alegó tener derecho al valor neto de sus derechos de arrendamiento y a una justa compensación por los perjuicios ocasionados debido a la expropiación. Planteó que esta cantidad era independiente, separada y adicional de la suma que ya había sido depositada por la Administración y retirada por Nerashford, puesto que dicha suma sólo cubría el valor del inmueble.

El tribunal de instancia decidió que al expropiar, el Estado no estaba obligado a valorar el arrendamiento que afectaba la finca, pero que la arrendataria no quedaba privada de la capacidad para demostrar posteriormente que su contrato de arrendamiento es extraordinario, y así justificar la concesión de una compensación adicional al justo valor en el mercado.

Luego de haber tomado esta determinación, el tribunal de instancia celebró una vista y concluyó que el contrato era extraordinario por ser extenso y sumamente complicado, y debido a que no se otorgaba con frecuencia. Como consecuencia, el Tribunal Superior resolvió que el Gobierno

---

(²) Dichos retiros fueron autorizados por el tribunal de instancia a favor del Secretario de Hacienda para el pago de contribuciones sobre la propiedad, y a favor del Royal Bank de Puerto Rico para cancelar una hipoteca que gravaba la finca.

está obligado a compensar a Yogui con una cantidad adicional a la que tiene que pagar al dueño de la finca por el justo valor en el mercado de la finca.

De este dictamen recurre la Administración y sostiene que dicho contrato de arrendamiento no era extraordinario y que no procedía la compensación adicional ordenada por el tribunal a quo. Por la naturaleza e importancia de la controversia, expedimos el auto.

## II

Nuestra Constitución dispone que no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación. Art. II, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1.[3] El Estado deposita la compensación debida a favor del dueño y de cualquier persona que tenga derecho, conforme las normas aplicables, a participar de ella. Secs. 4 y 5a de la Ley de 12 de marzo de 1903 (32 L.P.R.A. secs. 2905 y 2907); Reglas 58.3 y 58.9 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Bajo la Constitución federal no existe una fórmula rígida que determine la justa compensación que el Estado tiene que pagar por el título de dominio de una finca. *United States v. Cors*, 337 U.S. 325 (1949); 4 *Nichols' The Law on Eminent Domain* Sec. 12.01, págs. 12-30 a 12-34 (3ra ed. 1993). La regla general que se ha usado por los tribunales federales para determinar dicha cantidad ha sido la del valor en el mercado de la finca, sin tomar en consideración las cargas reales o gravámenes que afecten a la finca. A este método se le ha llamado el *undivided fee rule*. *Nichols'*, supra, Sec. 12.05[1], págs. 12-103 a 12-108; R.E. Boyer y J.P. Wilcox, *An Economic Appraisal of Leasehold Valuation in Condemnation Proceedings*, 17 U. Miami L.

---

[3] La Constitución federal contiene una disposición casi idéntica. Emda. V, Const. EE. UU., L.P.R.A., Tomo 1.

Rev. 245, 248 y 258–259 (1963). Aunque no había sido reconocido expresamente por nuestra jurisprudencia, este método es compatible con nuestros pronunciamientos previos, y al ser la manera más generalizada, sencilla y lógica de determinar qué compensación es justa, expresamente lo adoptamos en Puerto Rico.([4])

La utilización de este método responde al principio fundamental de que la compensación que el Estado paga es por la finca expropiada, no por los diferentes intereses en ella. *Nichols'*, supra, Sec. 12D.04[3], págs. 12D-45 a 12D-46. Por eso hemos dicho:

> "Un recurso de expropiación es un procedimiento *in rem*. No va dirigido contra ningún demandado en particular, sino contra la propiedad propiamente dicha. Si bien el ejercicio del poder de expropiar extingue todos los derechos anteriores sobre la propiedad, el gobierno no expropia el interés que pueda tener ningún demandado en particular sobre la propiedad." *Pueblo v. McCormick, Alcaide & Co.*, 78 D.P.R. 939, 945 (1956), citando a *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961, 970 (1953). Véanse: *E.L.A. v. Registrador*, 111 D.P.R. 117, 120 (1981); *Olivero v. Autoridad de Carreteras*, 107 D.P.R. 301, 306 (1978); *E.L.A. v. Sociedad Protectora*, 100 D.P.R. 844, 849 (1972).

De la misma manera hemos expresado que "[e]l derecho del gobierno a expropiar propiedad privada para uso público 'es un atributo inherente y necesario de la soberanía ... y es superior a todos los derechos de propiedad.' ... El título que se adquiere mediante la expropiación no se deriva del título del anterior dueño, sino que es un título nuevo, independiente y absoluto". (Citas omitidas.) *Pueblo v. 632 Metros Cuadrados de Terreno*, supra, pág. 970; *E.L.A. v. Registrador*, supra, pág. 119.

> La inscripción de dominio a favor del Gobierno se hace libre de todo gravamen ... [la expropiación forzosa] "extingue todas las

---

([4]) Nuestra jurisprudencia ha usado el concepto de "valor en el mercado" como guía para determinar si una compensación es justa. *Pueblo v. Huyke*, 70 D.P.R. 754, 757 (1950).

cargas y derechos anteriores sobre el bien expropiado, los cuales se convierten ... en derechos sobre el justo precio, ... los asientos de cargas, gravámenes, derechos reales o limitaciones que graven el dominio o derecho expropiado, serán objeto de cancelación, ... lo expropiado queda libre de toda carga, gravamen o limitación, pues la expropiación las extingue, transformándose la titularidad sobre las mismas en un derecho sobre el dinero obtenido como justo precio de la expropiación". (Citas omitidas.) *E.L.A. v. Registrador*, supra, págs. 120–121.

■ El término "valor en el mercado" lo hemos definido como "el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquel en que un vendedor, en las mismas circunstancias, estaría dispuesto a vender, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere dedicarlo dentro de un futuro razonable cercano". *Pueblo v. Huyke*, 70 D.P.R. 754, 757 (1950). El tribunal, al determinar el valor en el mercado de una finca, debe tomar en consideración todo elemento o indicador que un comprador prudente consideraría. *Nichols'*, supra, Sec. 12B.03[2], pág. 12B-8. Véase, también sobre este tema, Boyer y Wilcox, *supra*, pág. 251.

■ Cuando se usa el *undivided fee rule*, se considera justa una compensación que refleje el valor en el mercado de la finca sin las cargas o gravámenes. Es decir, no se calcula el valor en el mercado de la finca como existe, en la realidad, con todos los gravámenes y cargas reales que la afecten, sino que se examina el valor en el mercado de la finca tal como si ésta estuviera libre de gravámenes y de derechos reales pertenecientes a personas distintas al dueño. Con el propósito de ilustrar la norma expuesta, digamos que una finca particular está gravada —como predio sirviente— por una servidumbre y que dicha carga reduce el precio que el dueño podría obtener por la finca si no existiera la servidumbre. En este caso, el Gobierno pagará, no el precio de la finca con la servidumbre, sino el valor que

el dueño obtendría por la finca de ésta no estar gravada por dicha servidumbre.

Sobre la responsabilidad del Gobierno en casos de expropiación forzosa, hemos resuelto que el Estado no tiene que pagar por "las oportunidades que el dueño pueda perder como resultado de la expropiación", por los "costos de mudanza o por la pérdida de negocios mientras se muda" ni por las "pérdidas futuras" o "la pérdida de la plusvalía (good-will) proveniente de la ubicación de la propiedad". *Estado Libre v. Baldrich*, 79 D.P.R. 680, 686–687 (1956). Véanse: *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 958; *Olivero v. Autoridad de Carreteras*, supra, pág. 307; *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 962 y 964–965. La jurisprudencia federal tampoco le reconoce derecho al arrendatario a ser compensado por la pérdida de ganancias o de negocios. *United States v. Petty Motor Co.*, 327 U.S. 372, 377–378 (1946); *U.S. v. 57.09 Acres of Land, More or Less, etc.*, 757 F.2d 1025, 1029 (9no Cir. 1985). Aun bajo nuestra disposición constitucional en cuanto a que se compensará por propiedad "perjudicada", "debe haber un daño al terreno propiamente dicho o a los derechos de propiedad sobre el mismo". *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 964 y 965.

La responsabilidad fundamental del Gobierno consiste en depositar una compensación justa. Al Estado no le interesa cómo las distintas partes interesadas se dividirán la compensación depositada. *E.L.A. v. Sociedad Protectora*, supra, pág. 848; *Direct Mail Services, Inc. v. Best*, 729 F.2d 672, 675–676 (10mo Cir. 1984). Aunque el Gobierno tenga la obligación de hacer "un esfuerzo razonable para incluir como demandados a todas las personas que pudieran tener un interés en los bienes expropiados, el gobierno no tiene interés como tal en la distribución de la compensación pagada a los varios reclamantes". *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 947, citando a *Pueblo v. 632 Metros Cuadrados de Terreno*, supra, pág. 971.

Véase *Nichols'*, supra, Sec. 12D.04[3], págs. 12D-43 a 12D-45.([5]) Una vez el Estado cumpla con su obligación de realizar un esfuerzo razonable para incluir, como partes con interés en el pleito de expropiación, a toda persona que pueda tener un reclamo legítimo sobre la compensación debida, la única obligación restante del Estado consistirá en depositar la compensación que el tribunal determine es justa. *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 947 y 951–952; *Pueblo v. 632 Metros Cuadrados de Terreno*, supra, pág. 971; *Direct Mail Services, Inc. v. Best*, supra, pág. 675.

Es decir, las partes con interés no tienen cada una un derecho de crédito contra el Estado.([6]) Cuando el Gobierno expropia el título de dominio de una finca, tomando así la propiedad de varias personas, no surge para cada persona un derecho de crédito frente al Gobierno; sólo nace una obligación del Gobierno de depositar a favor de éstas una compensación justa por la finca. Por tal razón, el Estado no está obligado a pagarle a cada parte interesada la porción que le corresponda de la compensación depositada. Poseen, en cambio, unos derechos entre sí respecto a la justa compensación depositada. *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 945 y 952; *E.L.A. v. Sociedad Protectora*, supra, pág. 848; *Direct Mail Services, Inc. v. Best*, supra. "La compensación fijada por el tribunal sustituye los bienes inmuebles y los dueños de cada interés sobre los mismos recobran de dicha compensación el

---

([5]) "... [E]n la demanda se mencionarán, hasta donde sea posible al demandante determinarlo, los nombres de todas aquellas personas que ... deben ser notificad[a]s del procedimiento a los fines del derecho que puedan tener a la compensación que se fije ...." Séc. 4 de la Ley de 12 de marzo de 1903 (32 L.P.R.A. sec. 2905). Véase, también, la Regla 58.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

([6]) Sólo cuando el Estado incumpla su obligación de hacer un esfuerzo razonable por incluir en el pleito a todas las partes con interés legítimo sobre la finca, es que surgiría una obligación directa del Estado hacia la parte no incluida y, aún así, dicha obligación sería subsidiaria a la que tienen el resto de las partes compensadas hacia la parte olvidada. *Pueblo v. McCormick, Alcaide & Co.*, 78 D.P.R. 939, 947 y 951–952 (1956). Véase, también, *Direct Mail Services, Inc. v. Best*, 729 F.2d 672, 675 (10mo Cir. 1984).

mismo interés proporcional que tenían en la propiedad expropiada." *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 945–946; *Nichols'*, supra, Sec. 12D.04[3], pág. 12D-46; Boyer y Wilcox, *supra*, pág. 261.

Establecidos los principios generales sobre las obligaciones del Estado al ejercitar su poder de expropiación, procedemos a examinar el efecto que tiene la existencia de un contrato de arrendamiento sobre el cálculo de la justa compensación que el Estado tiene que pagar.

## III

La existencia de un contrato de arrendamiento de ordinario no afecta la justa compensación debida. Se calcula como si dicho contrato no existiese. *E.L.A. v. Sociedad Protectora*, supra, pág. 849; *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 946. Bajo este supuesto se aplica la regla general en cuanto a que la compensación total se computa sin tomar en consideración las cargas que afecten a la finca. De ahí nuestra expresión:

> El hecho de que el título de dominio sobre bienes expropiados esté sujeto a un contrato de arrendamiento de ordinario no tiene efecto alguno sobre la compensación que el gobierno deba pagar por dicho título. *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 946.

Sin embargo, en *Pueblo v. McCormick, Alcaide & Co.*, supra, reconocimos que, en casos excepcionales, un contrato de arrendamiento puede aumentar el valor de la propiedad.[7] El caso de autos nos permite precisar el alcance de esta excepción.

En casos extraordinarios la existencia del contrato de arrendamiento aumentará el atractivo que la finca tenga para un comprador, por lo que éste probablemente pagaría

---

[7] Véanse: *E.L.A. v. Sociedad Protectora*, 100 D.P.R. 844, 849 (1972); *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 946; *Direct Mail Services, Inc. v. Best*, supra, pág. 675.

más por la finca que si no existiera el contrato. Esto sucedería, por ejemplo, si el arrendatario tiene solvencia económica reconocida y si el canon convenido sobrepasa el valor económico del alquiler. En tal caso la existencia de este contrato "extraordinario" sí tendría que tomarse en cuenta al fijar el valor en el mercado de la finca constitutivo de la justa compensación que el Estado tiene que pagar. Esta norma se ha expresado de la manera siguiente:

> The existence of the leasehold may, in certain exceptional cases result in an enhancement of the valuation of the demised premises. This, however, would not be due to multiple ownership, but due to the character of the leasehold, as, for instance, where land is leased to a financially responsible lessee at a high rental. Such lease unquestionably enhances the value of the property. *Nichols'*, supra, Sec. 12D.04[1], pág. 12D-27, citado con aprobación en la pág. 14 de la resolución recurrida.

En estos casos no se trata de que el Estado añada al precio de la finca unas partidas por concepto del valor del contrato de arrendamiento, por los daños causados al arrendatario o por la pérdida de ingresos o negocios que pueda sufrir el arrendatario.(8) El Estado pagará más porque la finca tiene unas circunstancias especiales que le aumentan su valor. No paga más por razón de derechos particulares, constitucionales o estatutarios del arrendata-

---

(8) El arrendatario no tiene derecho al valor en el mercado del contrato. Tampoco tiene derecho a los daños y perjuicios que le ocasione la privación de su propiedad mediante el proceso de expropiación. Véanse: *United States v. Petty Motor Co.*, 327 U.S. 372, 377–378 (1946); *U.S. v. 57.09 Acres of Land, More or Less, etc.*, 757 F.2d 1025, 1029 (9no Cir. 1985); Anotación, *Eminent Domain: Measure and Elements of Lessee's Compensation for Condemnor's Taking or Damaging of Leasehold*, 17 A.L.R.4th 337, 349 y 446–450 (1982). No nos obliga lo expresado sobre este tema en los casos *Veve v. Lloreda, Juez de Distrito*, 17 D.P.R. 564 (1911); *American R.R. Co. of P.R. v. Quiñones*, 15 D.P.R. 1 (1909), y *Junta Escolar de Carolina v. Saldaña et al.*, 14 D.P.R. 348 (1908), debido a que éstos se fundamentan en el ya derogado (por la Ley Núm. 300 de 12 de abril de 1946) tercer párrafo del Art. 282 del Código Civil, 31 L.P.R.A. sec. 1113, que disponía lo siguiente: "La indemnización comprenderá no sólo el valor de la cosa de la cual el propietario es privado, sino que también una remuneración por los daños y perjuicios que se le ocasionen con la privación de la propiedad." Véase *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 949 esc. 6. Esto no significa que el Estado es inmune a acciones derivadas de su culpa o negligencia al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

rio, sino por razón de la obligación constitucional del Estado de pagar una compensación justa cuando tome propiedad privada para uso público.

 El lenguaje de nuestra Constitución, relativo a la obligación del Estado de compensar cuando se "tome" o "perjudique" la propiedad, no exige "que el gobierno pague al dueño del título de dominio su valor total y además pague a un arrendatario ... por su interés". *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 948–949.([9]) El Estado incurriría en responsabilidad separada, adicional y subsidiaria frente al arrendatario si dejase de cumplir con alguna de sus otras obligaciones, como sucedería si no fuese diligente en incluirlo como parte con interés en el pleito.

## IV

Al examinar la controversia concreta que este caso nos presenta, consideramos primero el efecto de una de las cláusulas contractuales acordadas por Nerashford y Yogui en el contrato de arrendamiento:

En caso de que la propiedad arrendada sea expropiada bajo poder gubernamental, este arrendamiento expirará en el día en que se efectúa la expropiación y la Arrendataria quedará relevada de cualquier responsabilidad bajo este contrato que surja con posterioridad a dicha fecha.

. . . . . . . .

En todo caso de expropiación, tanto la Arrendadora como la Arrendataria estarán libres para reclamar en contra de la autoridad expropiante la suma de los daños sufridos por cada una respectivamente como resultado de dicha expropiación. Inciso T de la segunda cláusula de la escritura de arrendamiento. Anejo B, págs. 11–12.

Una lectura integral de la cláusula revela que ésta no le niega al arrendatario todo derecho a participar, en la me-

---

([9]) También se distingue aquí el caso *Pueblo v. García*, 66 D.P.R. 504, 510–514 (1946).

dida que le corresponda, de la justa compensación que el Estado deposite a favor de todos los interesados en la finca.

El primer párrafo de dicha cláusula existe para impedir cualquier alegación del dueño de que el arrendatario continúe obligado, tras la expropiación, a satisfacer los cánones de arrendamiento. El propio lenguaje del párrafo sostiene esta conclusión, al concluir con el señalamiento de que "la Arrendataria quedará relevada de cualquier responsabilidad bajo este contrato". Anejo B, pág. 11. A esto es que se limita el efecto de la cláusula.

■ Más aún, para interpretar una cláusula contractual como una renuncia del arrendatario al derecho que ordinariamente le asiste a participar de la compensación que el Estado deposite, dicha renuncia debe constar de una manera clara y expresa. Concluimos que una cláusula contractual, al disponer que el contrato de arrendamiento "expirará en el día que se efectúa la expropiación", no puede considerarse una renuncia clara al derecho del arrendatario de participar, según le corresponda, de la justa compensación debida por el Estado.

La conclusión anterior se refuerza cuando consideramos el último párrafo de la cláusula contractual en cuestión. En dicho pasaje se dispone que "tanto la Arrendadora como la Arrendataria estarán libres para reclamar en contra [del Estado] la suma de los daños sufridos por cada una respectivamente como resultado de dicha expropiación". Anejo B, pág. 12. Mediante esta disposición, Nerashford —la dueña de la finca— reconoce el derecho de Yogui —la arrendataria— a hacer uso del derecho que le asiste de participar, de acuerdo con las normas fijadas por nuestro ordenamiento, de la justa compensación que el Estado deposite.

La jurisprudencia federal ha interpretado, de manera idéntica, las cláusulas que establecen los derechos de los arrendatarios cuando se expropia una finca. En *United States v. Petty Motor Co.*, supra, el Tribunal Supremo federal resolvió que, bajo la siguiente cláusula contractual, el

arrendatario había renunciado al derecho —que normalmente le asistiría— a recobrar de la compensación que el Estado depositara:

"If the whole or any part of the demised premises shall be taken by Federal, State, county, city, or other authority for public use, or under any statute, or by right of eminent domain, then when possession shall be taken thereunder of said premises, or any part thereof, the term hereby granted and all rights of the Lessee hereunder shall immediately cease and terminate, *and the Lessee shall not be entitled to any part of any award that may be made for such taking, nor to any damages therefor* except that the rent shall be adjusted as of the date of such termination of the Lease." (Énfasis suplido.) *United States v. Petty Motor Co.*, supra, págs. 375–376 esc. 4.

Lógicamente, el Tribunal Supremo federal consideró que, en ese caso, el arrendatario había expresado con claridad, en la cláusula citada, su renuncia a participar de la compensación que el Estado depositara.

Posteriormente se ha resuelto que cláusulas prácticamente iguales a la presente no constituyen una renuncia del arrendatario a participar de la compensación que el Estado deposite. Así, en *United States v. Right to Use, Etc., Land, Alexandria, Va.*, 484 F.2d 1140 (4to Cir. 1973), se resolvió que la cláusula siguiente no constituía tal renuncia:

"If the entire leased premises shall be taken for any public or quasi-public use under any statute or by the right of eminent domain ... then all obligations of the Lessee under this lease shall cease and terminate as of the date on which the Lessee surrenders, or is deprived of, the physical possession and occupation of said demised premises, and the Lessee shall have the right to file and prosecute its claims against such taking authority for damages resulting from such taking." *United States v. Right to Use, Etc., Land, Alexandria, Va.*, supra, pág. 1143 esc. 3.

Distinguiendo a *United States v. Petty Motor Co.*, supra, el tribunal señaló que en aquel caso

... la cláusula no sólo terminaba el arrendamiento, sino que

proveía para que el arrendatario no tuviera derecho a ninguna compensación. Aquí, por otro lado, [el arrendatario] reservó su derecho a reclamar contra el gobierno por los daños que surgieran de la expropiación. Aunque esta cláusula no agranda la obligación del Estado, sí afecta la distribución de la compensación. La cláusula es un reconocimiento al dueño de que el arrendatario sufrirá daños por motivo de la expropiación y que éste tendrá derecho a participar de la compensación. Si la intención de las partes hubiese sido otra, se debió utilizar una cláusula similar a la mencionada en *Petty Motor*, ... impidiéndole al arrendatario participar de la compensación. (Traducción nuestra.) *United States v. Right to Use, Etc., Land, Alexandria, Va.*, supra, pág. 1145.

## V

Aclarado el efecto de la cláusula pactada por Nerashford y Yogui, en relación con las consecuencias de la expropiación, pasamos a aplicar la normativa expuesta a los hechos del caso ante nos. La resolución recurrida resuelve que el Estado tiene frente al arrendatario una responsabilidad independiente y adicional a la que —en general— tiene, frente a los interesados correspondientes, por el valor de la finca. Procede revocar dicho dictamen.

El análisis seguido por el tribunal de instancia es incorrecto porque concluye que el Estado está obligado a pagar dos (2) compensaciones: una al dueño, por el valor de la finca, y otra aparte al arrendatario, por la naturaleza extraordinaria de su contrato de arrendamiento.

De la normativa antes descrita se desprende que el Estado sólo tiene una obligación: la de depositar la justa compensación correspondiente al valor del título de dominio de la finca. Esta cantidad se reparte entonces entre el dueño y arrendatario, personas cuya propiedad fue tomada en este caso sobre la base y en proporción a sus respectivos intereses.

Lo procedente era que el tribunal de instancia examinara si la existencia del contrato aumentaba el atractivo de la finca, en cuyo caso dicho contrato tendría que, como

excepción, ser tomado en consideración al fijar la justa compensación. Veamos.

■ El Estado depositó trescientos ochenta y ocho mil dólares ($388,000) como justa compensación por el título de dominio de la finca. Conforme a la regla general, dicho valor fue calculado sin tomar en consideración la existencia del arrendamiento. Como la única obligación del Estado es depositar una justa compensación por la propiedad tomada, lo que queda por resolver es si este arrendamiento aumenta el valor de la finca para un posible comprador, debido a lo alto del canon que el nuevo dueño percibiría y a la solidez económica del arrendatario. De ser así, el contrato es "excepcional", por lo que su impacto tiene que considerarse al calcular el valor en el mercado de la finca, constitutivo de la justa compensación.

Corresponde al foro de instancia examinar todos los factores económicos pertinentes para decidir si el valor de la finca aumenta debido a la existencia del contrato entre Yogui y Nerashford.([10]) Siendo Yogui quien alega que lo depositado por el Estado no constituye la justa compensación por la finca, será Yogui quien tenga el peso de la prueba para demostrarlo. *E.L.A. v. Sociedad Protectora*, supra, pág. 857; *Estado Libre v. Baldrich*, supra, pág. 686; *Pueblo v. McCormick, Alcaide & Co.*, supra, pág. 952; *Pueblo v. 632 Metros Cuadrados de Terrenos*, supra, pág. 976; *Pueblo v. García*, 66 D.P.R. 504, 508 (1946).

Por las razones antes expuestas, se devuelve el caso al foro de instancia para que éste oiga la prueba y determine, conforme a los criterios explicados aquí, si esta es una de

---

([10]) Por ejemplo, se tendrá que tomar en consideración el efecto, sobre el valor en el mercado de la finca, de la cláusula de opción de compra en este contrato de arrendamiento. Mediante dicha cláusula, Yogui tenía la opción de comprar la finca durante un período específico de tiempo. Véanse las págs. 16–18 de la Escritura de Arrendamiento Núm. 2 de 5 de febrero de 1985, autorizada por el notario Ramón Moran Loubriel, junto a las págs. 5–6 de la Escritura de Acta Aclaratoria Núm. 15 de 20 de agosto de 1985, autorizada por el notario Ramón Moran Loubriel. Normalmente la existencia de una opción como ésta disminuye el atractivo de la finca para un posible comprador, afectando así el valor en el mercado de la finca.

las situaciones excepcionales en la cual el valor de la finca ajustado por el contrato de arrendamiento excede el valor de la finca, considerada como libre del arrendamiento y de cualquier gravamen. De ser así, determinará por cuánto el arrendamiento aumenta el valor de la finca y esta cantidad final será la justa compensación única que el Estado tenía que depositar. De lo contrario, no será necesario ajustar, por razón del arrendamiento, la compensación depositada por el Estado.

El tribunal determinará entonces si procede dividir la compensación entre el dueño y la arrendataria; de proceder, determinará cómo se dividirá. Debido a que no ha sido resuelto por el tribunal de instancia ni ha sido objeto de prueba, no estamos en posición de resolver la controversia relativa a la posible participación de Yogui en la compensación que el tribunal determine es justa.[11] Reiteramos que la cantidad a la cual tiene derecho un arrendatario procede de la justa compensación que el Estado tiene que depositar. *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 945 y 952; *E.L.A. v. Sociedad Protectora*, supra, pág. 848. Véanse, también: *National R.R. Passenger Corp. v. Faber Enterprises*, 931 F.2d 438, 440 (7mo Cir. 1991); *Di-*

---

[11] Conviene recordar, sin embargo, que nuestra jurisprudencia ha reconocido que el arrendatario de una finca expropiada tiene derecho a participar de la justa compensación que el Estado deposite. *Olivero v. Autoridad de Carreteras*, 107 D.P.R. 301, 306 (1978); *E.L.A. v. Sociedad Protectora*, supra, pág. 850; *Estado Libre v. Baldrich*, 79 D.P.R. 680, 684–685 (1956); *Pueblo v. McCormick, Alcaide & Co.*, supra, págs. 952–953. Para una discusión muy buena sobre este tema, véase R.E. Boyer y J.P. Wilcox, *An Economic Appraisal of Leaschold Valuation in Condemnation Proceedings*, U. Miami L. Rev. 245, 261–275 (1993).

La jurisprudencia federal ha establecido las mismas normas bajo la Constitución federal. *Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303–304 (1976); *United States v. Petty Motor Co.*, supra, pág. 381; *Nichols'*, supra, Sec. 12D.04[4], págs. 12D-52 a 12D-53; *United States v. Right to Use, Etc., Land, Alexandria, Va.*, 484 F.2d 1140, 1145 (4to Cir. 1973), citando a *Hancock v. United States*, 155 F.2d 977, 978 (1er Cir.), *cert.* denegado, 329 U.S. 774 (1946).

Sobre el efecto de acuerdos contractuales entre arrendador y arrendatario sobre la distribución de la compensación entre ellos, véanse: *Pennsylvania Ave. Dev. v. One Parcel of Land, Etc.*, 670 F.2d 289, 292, 294 (Cir. D.C. 1981); *United States v. Petty Motor Co.*, supra, págs. 375–376; *Alamo Land & Cattle Co. v. Arejona*, supra, pág. 304; *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 376 (1990); *United States v. Right to Use, Etc., Land, Alexandria, Va.*, supra.

*rect Mail Services, Inc. v. Best,* supra, pág. 675. La compensación por el arrendamiento "debe recobrarse de la suma que represente el valor total del título de dominio y no en adición a ella". *Olivero v. Autoridad de Carreteras,* supra, pág. 306.([12])

En estas circunstancias, *procede revocar el dictamen recurrido y devolver el caso para la continuación de los procedimientos.*

*Se dictará sentencia de conformidad con esta opinión.*

El Juez Asociado Señor Negrón García disintió con opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

No es menester devolver el caso al tribunal de instancia para ventilar si el contrato de arrendamiento entre Empresas Yogui, Inc. y Nerashford Development Corporation (en adelante Nerashford) es ordinario o extraordinario, pues cuando se presentó la demanda de expropiación y se decretó judicialmente la incautación, éste no había comenzado. Por ende, cualquier compensación en beneficio de Empresas Yogui, Inc. sería improcedente por especulativa. Veamos.

---

([12]) En *Olivero v. Autoridad de Carreteras,* supra, había un convenio entre la demandante y el Estado mediante el cual fijaron cierta cantidad como la compensación justa y razonable por el valor de lo expropiado. La demandante reclamaba además daños causados por actuaciones negligentes del Estado. Se decidió que la demandante no tenía derecho a indemnización por estos daños, ya que el Estado no había incurrido en negligencia. Íd., págs. 305–308. Es en ese contexto que debe entenderse nuestra expresión en dicho caso sobre la ausencia de "circunstancias extraordinarias" justificantes de una partida adicional al justo valor en el mercado de la propiedad, según acordado éste por las partes. Íd., pág. 307.

## I

El 7 de agosto de 1974 la Junta de Gobierno de la Administración de Terrenos de Puerto Rico, mediante la Resolución Núm. 356, autorizó a su Director Ejecutivo a adquirir fincas y propiedades cuyo valor no excediera cuatrocientos cincuenta mil dólares ($450,000) y no fuesen utilizadas para uso intensivo agrícola e industrial. Así investido, el Director Ejecutivo comenzó los trámites en la Junta de Planificación (en adelante Junta) para expropiar mil doscientos cinco (1,205) metros cuadrados propiedad de Nerashford ubicados entre las avenidas Ashford y Magdalena en el Condado, zona conocida como "Las Nereidas". El 21 de marzo de 1982 la Junta aprobó la expropiación (Caso Núm. 81-18-A-531-EPA). Posteriormente, el 5 de febrero de 1985, mediante una escritura pública, Nerashford y Land & Lease Development Corp. otorgaron un contrato de arrendamiento sobre dicho terreno con una duración de veinticinco (25) años y que *"comenzará seis (6) meses después de la fecha de otorgamiento de la escritura*, y finalizará en igual día y mes al cumplirse los veinticinco (25) años pactados". (Énfasis suplido.) Anejo B, pág. 1. Se pactó un canon anual de noventa mil dólares ($90,000) que había de pagarse en mensualidades de siete mil quinientos dólares ($7,500). La arrendataria tenía potestad para subarrendar el inmueble siempre que construyera "una estructura de aproximadamente [t]res [m]il (3,000) pies cuadrados donde habilitará un local comercial en el que instalará y operará un establecimiento para el expendio de alimentos rápidos ('Fast Foods') de su cadena de establecimientos en Puerto Rico bajo el nombre de 'The Golden Skillet', que es el negocio principal al cual se dedica la [arrendataria]". Íd., págs. 3–4. Además, la arrendataria tenía derecho a ejercitar durante los primeros cinco (5) años una opción de compra. *El contrato quedaría sin efecto de no obtener la arrendataria el permiso de construcción*

*necesario.* La escritura fue debidamente inscrita en el Registro de la Propiedad.

Enfatizamos que las partes vislumbraron una posible expropiación, y a tal efecto consignaron:

> En caso de que la propiedad arrendada sea expropiada bajo poder gubernamental, *este arrendamiento expirará en el día en que se efectúa la expropiación* y la Arrendataria quedará relevada de cualquier responsabilidad bajo este contrato que surja con posterioridad a dicha fecha.
>
> Si la expropiación es parcial y el remanente de la propiedad no sea adecuado para el uso dado hasta ese momento por la Arrendataria, la Arrendataria podrá dar por terminado este contrato de arrendamiento dentro de treinta (30) días después de haber sido notificada por la Arrendadora la expropiación.
>
> Cuando ocurra una expropiación parcial, pero el contrato no se de por terminado, entonces este contrato de arrendamiento continuará en toda su fuerza y vigor en cuanto a la porción no expropiada y la renta a pagarse para el remanente del término será reducida y ajustada en base a[sic] la porción del terreno y estructura expropiada al total de terreno y estructura antes de la expropiación.
>
> En todo caso de expropiación, tanto la Arrendadora como la Arrendataria estarán libres para reclamar en contra de la autoridad expropiante la suma de los daños sufridos por cada una respectivamente como resultado de dicha expropiación. En todo caso la Arrendataria tendrá derecho a ser compensada por el costo no depreciado de las estructuras o mejoras realizadas por dicha Arrendataria, las cuales se entenderán que son depreciadas en línea recta a través del período de duración comprendida desde la terminación de la construcción o mejora hasta la terminación pactada del presente contrato. (Énfasis suplido.) Anejo B, págs. 11–12.

El 20 de agosto de 1985 Nerashford, Land & Lease Development Corp., Empresas Yogui, Inc. y el Sr. Radamés Matos y su esposa otorgaron un Acta Aclaratoria y de Modificación de Escritura de Arrendamiento. En ésta expusieron que el señor Matos era presidente de Empresas Yogui, Inc. y ésta, a su vez, *mandante* de Land & Lease Development Corp. Además, estipularon que el contrato de arrendamiento lo había hecho Land & Lease Development Corp.

para beneficio de Empresas Yogui, Inc., siendo ésta la verdadera arrendataria.

Entre otras cosas, el Acta dispuso:

> (c) El término del arrendamiento *comenzará un año, [y] cuatro meses después del otorgamiento de la Escritura de Arrendamiento.* Durante los últimos cuatro (4) meses de dicho período se le pagará una renta de Dos Mil Dólares ($2,000.00) mensuales a la arrendadora. (Énfasis suplido.) Anejo C, pág. 6.([1])

El 25 de marzo de 1986 el Estado incoó la petición de expropiación, *esto es, setenta y dos (72) días antes de que entrara en vigor el arrendamiento pactado.* Como compensación, depositó trescientos ochenta y ocho mil dólares ($388,000). El 2 de abril el Tribunal Superior, Sala de San Juan (Hon. Carlos Polo, Juez) decretó la incautación y otorgó al Estado el título absoluto. El 12 de marzo de 1992 dicho foro (Hon. Ángel González Román, Juez) concluyó que el contrato de arrendamiento mencionado era extraordinario y compensable en el procedimiento de expropiación. Sin éxito, la Administración de Terrenos de Puerto Rico pidió reconsideración. Ante un *certiorari*, la Mayoría hoy ordena devolver el caso al foro de instancia para que se presente la prueba y dilucide si el contrato es extraordinario y, de probarse, se compense a la arrendataria. *Disentimos.*

## II

El Art. 1433 de nuestro Código Civil establece que "[e]n el arrendamiento de cosas, una de las partes se obliga a dar a la otra el goce o uso de una cosa *por tiempo determinado* y precio cierto". (Énfasis suplido.) 31 L.P.R.A. sec. 4012. Además, en las obligaciones a plazo, el tiempo de duración comienza una vez llegue un evento determinado,

---

([1]) Vale señalar la diferencia de cinco mil quinientos dólares ($5,500) entre este canon y el pactado a pagarse durante la *vigencia* del contrato.

como lo sería un día. Art. 1078 del Código Civil señala, en lo pertinente:

> Las obligaciones para cuyo cumplimiento se haya señalado un día cierto, sólo serán exigibles cuando el día llegue. 31 L.P.R.A. sec. 3061.

Las obligaciones a plazo se han definido como "aquellas cuyos efectos han de comenzar o han de cesar en un momento futuro y que ha de producirse necesariamente". J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 112. Presentan la característica de que "nace[n] desde el momento en que se celebra el acto constitutivo; el plazo sólo influye en ella determinando, en cuanto al principio o en cuanto al fin, la duración de sus efectos". F. Puig Peña, *Tratado de derecho civil español*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1974, T. IV, Vol. 1, pág. 137.

## III

En el caso de autos el contrato de arrendamiento estaba sujeto al plazo inicial de 5 de junio de 1986, fecha cuando comenzaría. La expropiación se efectuó el 25 de marzo de 1986, *antes* de que llegara ese plazo; por ende, los efectos del contrato nunca comenzaron. En estas circunstancias, el Estado no tiene que compensar a la arrendataria Empresas Yogui, Inc. Incluso, se acordó que, de expropiarse el terreno, ese día expiraría el contrato. Obviamente, el contrato expiró antes de que llegara el plazo pactado para comenzar.

La sentencia mayoritaria presupone erróneamente la existencia del contrato; devuelve el recurso para que se determine si es ordinario o extraordinario. En virtud de ese mandato, de probarse extraordinario, impondríamos a la Administración *la absurda e injusta obligación de pagar por una ganancia especulativa que la arrendataria espe-*

*raba obtener una vez llegara el plazo cuando comenzaría el arrendamiento, se construyera el edificio y se subarrendaran las facilidades para establecerse varios locales de comida rápida que se esperaba que realizaran operaciones en el lugar.*

Ello es contrario a la norma imperante de que cuando el Estado expropia, lo procedente es compensar por el valor de la propiedad al *momento* de la incautación, más los intereses correspondientes. *Pamel Corp. v. E.L.A.*, 124 D.P.R. 853 (1989). Aquí, como el arrendamiento no había surtido efecto —a la fecha de la expropiación no había llegado el plazo pactado— éste no es compensable como un interés que gravaba la propiedad. Recuérdese que las partes variaron en dos (2) ocasiones la fecha cuando comenzaría el arrendamiento; en ambas establecieron el comienzo en momentos futuros determinables aparentemente especulando sobre la fecha de la expropiación que sabían ocurriría.

## IV

La Mayoría del Tribunal realiza una ingeniosa pero errónea "lectura integral" de la cláusula contractual antes citada que, en lo pertinente, dispone:

> *En todo caso de expropiación, tanto la Arrendadora como la Arrendataria estarán libres para reclamar en contra de la Autoridad expropiante la suma de los daños sufridos por cada una respectivamente como resultado de dicha expropiación.* En todo caso la Arrendataria tendrá derecho a ser compensada *por el costo no depreciado de las estructuras o mejoras realizadas por dicha Arrendataria,* las cuales se entenderán que son depreciadas en línea recta a través del período de duración comprendida desde la terminación de la construcción o mejora hasta la terminación pactada del presente contrato. (Énfasis suplido.) Anejo B, pág. 12.

Resulta claro que en esta cláusula ambas partes contratantes acordaron poder cobrarle al Estado, como entidad expropiante, *en la eventualidad en que sufrieran daños*

*como resultado de la expropiación.* Ignorando su sentido literal y espiritual, la Mayoría aduce que "[m]ediante esta disposición, Nerashford —la dueña de la finca— reconoce el derecho de Yogui —la arrendataria— a hacer uso del derecho que le asiste a participar, de acuerdo con las normas fijadas por nuestro ordenamiento, *de la justa compensación que el Estado deposite".* (Énfasis suplido.) Opinión mayoritaria, pág. 816. Existe una diferencia marcada entre la reclamación de *daños* que autoriza el contrato y el cobro de su participación en la *justa compensación* consignada, según sostiene la Mayoría; son dos (2) conceptos distintos que no se pueden confundir. No hay prueba de que la expropiación causara daños a Empresas Yogui, Inc.; tampoco que hubiera realizado las "mejoras o estructuras" expresadas en el contrato. Para colmo, la Mayoría ignora que esta disposición contractual nunca estuvo vigente, pues el contrato estaba señalado para comenzar en una fecha que resultó ser posterior a la expropiación.

Por otro lado, rechazamos el análisis estrictamente teórico, ajeno a la realidad fáctica, que esboza la Mayoría al disponer que corresponde al foro de instancia determinar "si este arrendamiento aumenta el valor de la finca *para un posible comprador, debido a lo alto del canon que el nuevo dueño percibiría y a la solidez económica del arrendatario".* (Énfasis suplido.) Opinión mayoritaria, pág. 819. Una vez más, la Mayoría entra en el campo de lo conjetural. ¿Cómo exigirle al tribunal de instancia que estime si el arrendamiento aumentó el valor de la finca? ¿Cómo olvidar que nunca surtió efectos? ¿Cuál canon el "nuevo dueño" de la finca, es decir, *el Estado,* percibirá si éste no la dedicó al negocio de alquileres? Y, finalmente, ¿quién es el arrendatario con gran "solidez económica" que ayudará a aumentar el valor de la finca?

Es obvio que la Mayoría se ha adentrado en un análisis teórico y abstracto, sustrayéndose del marco real dentro del cual se efectuó la expropiación. Además, olvida que

quien expropió fue el Estado y éste no sustituyó a Nerashford en su carácter de arrendador. El contrato no había entrado en vigor, por lo que Nerashford nunca fue arrendador; el Estado tampoco decidió dedicar la propiedad al negocio de alquileres.

Recapitulando, como el arrendamiento no había comenzado a la fecha de la expropiación, disentimos. La reclamación de Empresas Yogui, Inc. por el beneficio económico que alegadamente dejaría de percibir por motivo de la expropiación *es de índole especulativa.*

Además, conociendo una posible expropiación, las partes pactaron que la arrendataria Empresas Yogui, Inc. sólo tendría derecho a reclamar a la autoridad expropiante el costo no depreciado de las estructuras o mejoras realizadas por ella. Surge de la prueba que a la fecha de la expropiación no se había construido el edificio en "Las Nereidas". No hay razón válida en derecho para ordenar la compensación. La opinión mayoritaria es un buen ejemplo de academicidad.