Carmen Castrodad y Alba Rosa Rodríguez Castrodad, demandantes y recurrentes, *v.* The Shell Company (Puerto Rico) Limited y otros, demandados y recurridos.

*Número:* CE-95-13          *Resuelto:* 14 de mayo de 1996

*M. Martínez Umpierre,* abogado de las peticionarias; *Ramón Coto-Ojeda* y *Nerylú Figueroa Estasie,* de *McConnell Valdés,* y *Luis R. Torres Gilormini,* abogados de los recurridos.

— o —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Hemos entendido conveniente y procedente expresarnos por separado. Ello en vista de que la jurisprudencia de este Tribunal sobre la materia aquí en controversia es una sumamente ambivalente; situación que entendemos amerita ser aclarada.

## I

Las demandantes peticionarias, Carmen Castrodad y Alba Rosa Rodríguez Castrodad —en adelante Castrodad— son dueñas de una propiedad inmueble donde ubica una estación de servicio de gasolina, situada la misma en Arecibo, Puerto Rico. Éstas le arrendaron la misma a The Shell Company P.R. Limited (en adelante Shell) por el término máximo de diez (10) años, mediante escritura de arrendamiento otorgada a esos efectos.

En lo pertinente a la controversia hoy ante nuestra con-

sideración, en el referido contrato de arrendamiento se hizo constar que:

———Mantenimiento, Reparaciones y Mejoras a la Propiedad: El mantenimiento y las reparaciones, tanto ordinarias y necesarias como extraordinarias, a la Propiedad y a las edificaciones que en ella ubican, y equipo instalado en la Propiedad, el cual es y seguirá siendo propiedad de la Arrendataria, serán por cargo y cuenta de la Arrendataria.————————La Arrendataria queda por la presente facultada para realizar las mejoras permanentes o alteraciones que estime necesarias a las edificaciones antedichas y a sus alrededores durante la vigencia del término del arrendamiento. Finalizado el término del arrendamiento, *todas* las mejoras permanentes realizadas por la Arrendataria quedarán para beneficio de la Propiedad y pasarán a ser propiedad de las Arrendadoras.————————————(e) *Facultad para Ceder el Arrendamiento o Subarrendamiento*: La Arrendataria podrá ceder el arrendamiento por el presente documento concedídole o subarrendar la Propiedad sin el previo consentimiento de las Arrendadoras, pero de hacerlo, seguirá siendo responsable a las Arrendadoras por las obligaciones contraídas en esta escritura.————————————————Apéndice, pág. 23.

Shell subarrendó la propiedad a José Labrador y su esposa Carmen Ortiz de Labrador (en adelante Labrador). En el contrato de subarrendamiento que a esos efectos otorgaron dichas partes, *específicamente* se hizo constar no sólo que Labrador tenía conocimiento del contrato original de arrendamiento otorgado entre Castrodad y Shell sino que el contrato de subarrendamiento está "sujeto a todos los términos del contrato de arrendamiento bajo el cual la compañía [Shell] tiene derecho de posesión sobre la estación".

Vencido el término de arrendamiento, Shell dio por terminado el contrato de subarrendamiento con Labrador por razón de haber expirado su derecho bajo el contrato original de arrendamiento. No habiendo Labrador desocupado la propiedad, Shell radicó una demanda de desahucio contra el primero en la Sala de San Juan del antiguo Tribunal Superior de Puerto Rico. Labrador, por su parte, presentó

ante la Sala de Arecibo del Tribunal Superior una demanda —contra Shell y Castrodad— sobre sentencia declaratoria, incumplimiento de contrato y daños, caso Civil Núm. CAC94-0222. En dicho caso Labrador alegó, en síntesis y en lo pertinente, que había construido en la propiedad en controversia, de buena fe, unas "nuevas edificaciones", teniendo derecho a retener la propiedad hasta tanto se le pagara o indemnizara por las mismas. Posteriormente, Shell y Labrador desistieron voluntariamente, y con perjuicio, de sus respectivas y mutuas reclamaciones en ambos casos, *quedando, en consecuencia, únicamente como partes, en el Caso Civil Núm. CAC94-0222, Labrador y Castrodad.*

Así las cosas, Castrodad radicó ante el Tribunal Superior de Puerto Rico, Sala de Arecibo, una demanda de desahucio contra Shell y Labrador.[1] Las referidas partes demandadas radicaron sendas mociones de desestimación. Shell alegó que, por motivo de que no está en la posesión material de la propiedad, la demanda resulta académica en cuanto a Shell se refiere. Labrador, por su parte, alegó que estando pendiente de adjudicación, en otro pleito, su derecho a compensación y retención, existe "conflicto de título" que hace mandatoria la desestimación de la demanda de desahucio en su contra.

El tribunal de instancia, en relación con la demanda de desahucio instada por Castrodad contra Shell y Labrador, dejó sin efecto el señalamiento de la "segunda comparecencia", ordenándole a las demandadas, "promoventes de la Moción de Desestimación que, en el término de diez (10) días, soliciten la consolidación del caso civil núm. AC94-0222" por ser éste el caso más antiguo, y que, sólo "cuando la Sala hermana determine si procede en derecho la com-

---

[1] Dicha demanda de desahucio fue, posteriormente, enmendada; la enmienda fue realizada con el propósito de adicionar una reclamación por concepto de cánones de arrendamiento vencidos y no pagados, alegadamente adeudádoles por Shell a Castrodad, referentes los mismos al período posterior al vencimiento del término de arrendamiento.

pensación y retención reclamadas por el señor Labrador, podrá determinarse si el procedimiento sumario es o no el adecuado". Sentencia de 21 de diciembre de 1994, pág. 4.

Inconforme, Castrodad acudió —vía *certiorari*— ante este Tribunal en revisión de la referida resolución, imputándole al foro de instancia haber errado:

> ...al entender que existe un conflicto de título y un derecho de retención a favor de Labrador, como consecuencia de éste haber realizado unas mejoras en la propiedad arrendada. Ello, no empece a que el contrato establecía que las mejoras quedaban a beneficio de Castrodad como dueñas del terreno.
>
> ...al ordenar la consolidación de un caso de desahucio con una acción ordinaria, destruyendo así el carácter sumario del procedimiento de desahucio.
>
> ...al declinar su jurisdicción y no celebrar la segunda comparecencia, aceptando como buena una alegada defensa de conflicto de título, cuando la parte demandada no estableció en forma alguna la existencia de dicho conflicto y el tribunal no tuvo otra cosa que una mera alegación sin prueba de la existencia del alegado conflicto. Petición de *certiorari*, págs. 3–4.

Mediante resolución a esos efectos, le concedimos término, tanto a Shell como a Labrador, para que mostraran causa por la cual:

> ....este Tribunal no deba expedir el auto solicitado y dictar Sentencia revocatoria de la resolución emitida el 21 de diciembre de 1994 por el Tribunal Superior de Puerto Rico, Sala de Arecibo. Resolución de 13 de marzo de 1995.

Tanto Shell, como Labrador, han comparecido en cumplimiento de la referida orden de mostrar causa. *Hemos entendido procedente, y conveniente, expresarnos por separado con el propósito de expresar los fundamentos por los cuales concurrimos con la sentencia que hoy emite una mayoría de los integrantes del Tribunal.* Ello, *principalmente*, debido a la jurisprudencia existente de este Tribunal sobre el asunto aquí en controversia; *jurisprudencia que es una ambivalente y hasta confusa.*

## II

La controversia que se nos plantea en el presente caso —esto es, de si a la luz de los hechos particulares del mismo erró, o no, el foro de instancia al "posponer" la tramitación, por la vía sumaria, de la acción de desahucio radicada y al remitir el asunto a una vista ordinaria o plenaria— depende, *naturalmente*, de la contestación que brindemos a la interrogante de si, conforme las disposiciones del Código Civil de Puerto Rico, un arrendatario o, *como en el presente caso*, un subarrendatario obligado por los términos del contrato original de arrendamiento, tiene derecho a ser "indemnizado" por unas mejoras "útiles", de carácter permanente, que realizó en la propiedad arrendada. *Además*, y dados los hechos particulares del presente caso, al contestar dicha interrogante tomamos en consideración el hecho adicional de que en el contrato original de arrendamiento, otorgado en el presente caso, expresamente se hizo constar que las mejoras permanentes que fueran realizadas en la propiedad objeto del arrendamiento "quedarán para beneficio de la Propiedad y pasarán a ser propiedad de las Arrendadoras".

La correcta solución de este caso *necesariamente* requiere, además de la consideración de lo expresamente pactado por las partes en el contrato de arrendamiento otorgado por ellas, el análisis de las disposiciones de los Arts. 297, 416 y 1463 del Código Civil de Puerto Rico,[2] las cuales establecen que:

*Sec. 1164. Derechos del dueño del terreno en que se edificare de buena fe*

El dueño del terreno en que se sembrare o plantare de buena fe, tendrá derecho a hacer suya la siembra o plantación, previa la indemnización establecida en las secs. 1468 y 1469 de este

---

[2] 31 L.P.R.A. secs. 1164, 1527 y 4070.

título, o a obligar al que plantó, a pagar el precio del terreno, y al que sembró la renta correspondiente.

El *dueño del terreno* en que se *edificare de buena fe*, tendrá *derecho* a hacer suya la obra, *previo el pago al dueño de la obra del costo de los materiales y la mano de obra*, o del costo de reproducción de la misma al momento en que el dueño del terreno ejercitarse su derecho, deduciendo la depreciación, lo que resultare mayor, o a obligar al que fabricó a pagar el precio del terreno. (Énfasis suplido.)

## Sec. 1527. Mejoras

El *usufructuario* podrá hacer en los bienes objeto del usufructo *las mejoras útiles o de recreo* que tuviere por conveniente, con tal que no altere su forma o substancia, *pero no tendrá por ello derecho a indemnización*. Podrá no obstante, retirar dichas mejoras, si fuere posible hacerlo sin detrimento de los bienes. (Énfasis suplido.)

## Sec. 4070. Derechos del arrendatario respecto de mejoras útiles y voluntarias

El *arrendatario* tendrá, respecto de las mejoras útiles y voluntarias, *el mismo derecho que se concede al usufructuario.* (Énfasis suplido.)

Como podemos notar, el antes transcrito Art. 297 del Código Civil regula, *en forma general*, la situación del edificante de buena fe en terreno ajeno. De manera genérica, *repetimos*, establece que el dueño del terreno, en que se edificare de buena fe, podrá hacer suya la edificación previo el pago correspondiente. Otra, *sin embargo*, es la situación en el caso en que hay una relación jurídica, *preexistente* a la construcción de la edificación, de arrendador y arrendatario entre el dueño del terreno y el edificante de buena fe. En esta situación aplican, *de ordinario*, las disposiciones de los antes transcritos Arts. 416 y 1463 del Código Civil.

Dicho de otra forma, los citados Arts. 416 y 1463 regulan, *de manera especial y específica*, la situación en que un arrendatario construye o edifica, de buena fe, en el bien inmueble objeto del arrendamiento. En esta situación, el

arrendatario —*que el Código Civil asemeja al usufructua-rio*— *no* tendrá derecho a indemnización, *por mandato expreso del transcrito artículo 416*, en relación con las "mejoras útiles", de carácter permanente, que construyere en el inmueble arrendado, excepto que podrá "retirar" de dicho inmueble las mejoras que puedan ser objeto de remoción.

Una "mejora" es un aumento de valor de la cosa, un acrecentamiento de su utilidad, beneficio real, esencial o accidental, sobre que lo que existía. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 7ma ed., Madrid, Ed. Reus, 1949, T. I, pág. 621. Por otro lado, una mejora "útil" es aquella que, sin ser necesaria, *aumenta la capacidad de rendimiento del inmueble* y, por ende, acrecenta el valor del mismo. F. Puig Peña, *Compendio de Derecho Civil español: Parte General*, Barcelona, Ed. Nauta, 1966, T. I. A éstos efectos, el tratadista Albaladejo nos señala que:

> Las mejoras útiles suponen, en cambio, una ventaja, aumento de valor o de productividad de la cosa, no una necesidad. Su calificación es elástica, en el sentido de que no es posible ni, por tanto, aconsejable mantener criterios apodícticos. Su delimitación es más bien negativa; mejoras útiles son aquellas ventajas que exceden de lo indispensable. Por eso, las obras de transformación pueden ser mejoras útiles o necesarias, mientras que las de reparación y seguridad siempre son necesarias. El grado de utilidad o el criterio de ventaja no viene definido por los textos legales. (Énfasis suprimido.) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1992, T. VII, Vol. 1, págs. 352–353.

En relación con los artículos de nuestro Código Civil, relacionados con el derecho de accesión (Arts. 297,298,299 y 300), *específicamente* resolvimos en *Marchand v. Montes*, 78 D.P.R. 131 (1955), que dichas disposiciones de ley *no* son aplicables a los casos de arrendamientos de un bien inmueble. En aquella ocasión, citando a Manresa, señalamos que

> [L]a segunda cuestión a que nos referimos es si el art. 361 (297 de nuestro Código Civil) es aplicable a aquellos casos en

los que el que edifica, planta o siembra sea arrendatario, enfiteuta o usufructuario del terreno del que se trata. *Indudablemente que no.* El mismo autor citado (Laurent) entiende, *de acuerdo con nuestra opinión,* que deberán tales casos "resolverse con arreglo a los principios generales aplicables a tal supuesto en el *arrendamiento,* enfiteusis *y usufructo",* y así, por lo que respecta al primero de dichos contratos (arrendamiento) .... (Énfasis en el original suprimido y énfasis suplido.) Íd., pág. 138.

Albaladejo señala, *de igual forma,* que los artículos de accesión *no* son de aplicación a los casos donde existen relaciones jurídicas las cuales están

Establecidas en el ámbito de los derechos de obligación (v. gr., arrendador-arrendatario, etc.) o derechos reales (nudo propietario-usufructuario, por ejemplo), que tiene normativa específica y su problemática se refiere a la titularidad de las *mejoras* o expensas útiles, hechas en la cosa arrendada, usufructuada, etc. *Las normas sobre accesión (arts. 358 y ss.) se aplican en los supuestos en los que quien planta, edifica o siembra no está vinculado con el* dominus soli *por una relación obligatoria o real disciplinada por normas específicas.* (Escolios omitidos, énfasis suplido y en el original.) Albaladejo, *op. cit.,* T. V, Vol. 1, págs. 326–327.

En *iguales* términos se ha expresado el Secretario de Justicia,[3] el cual ha señalado que

en esta jurisdicción los Arts. 297 a 300 del Código Civil (31 L.P.R.A. secs. 1164–1167) relativas al derecho de accesión, no son aplicables al caso de un arrendatario que construye en terrenos de su arrendador, y que el derecho de las partes debe determinarse bajo los principios generales que gobiernan los contratos de arrendamiento. (Traducción nuestra.) Op. Sec. Just. Núm. 1957–9, pág. 37.

*Nuestra jurisprudencia, sin embargo, ha sido ambivalente al respecto y, aun, hasta confusa.* Esto es, en ocasiones —y aun en situaciones de construcciones, o edificacio-

---

[3] Las opiniones legales que emite un Secretario de Justicia *no* obligan a los tribunales. *Meléndez v. Valdejully,* 120 D.P.R. 1, 20 esc. 7 (1987).

nes,([4]) realizadas en inmuebles *arrendados*— hemos expresado que es de aplicación a dicha situación el citado Art. 297 del Código Civil, ignorando la existencia, y el mandato, de las expresas disposiciones de los Arts. 416 y 1463 del Código Civil, ante. Véanse: *Toro v. Mojica*, 79 D.P.R. 630 (1956); *Berrocal v. Tribl. de Distrito*, 76 D.P.R. 38 (1954); *García v. Stella*, 69 D.P.R. 977 (1949); *Figueroa v. Rodríguez*, 68 D.P.R. 266 (1948); *Freyre v. Blasini*, 68 D.P.R. 211 (1948); *Martínez v. Torres*, 64 D.P.R. 44 (1944); *Aybar v. Jiménez*, 60 D.P.R. 745 (1942); *Palermo v. Corte*, 58 D.P.R. 189 (1941); *Pueblo v. Carrasquillo*, 58 D.P.R. 176 (1941).

Somos del criterio, sin embargo, que la confusión es una más aparente que real y que las posiciones asumidas en esos casos pueden ser armonizadas. *De hecho, somos del criterio que tenemos el deber de así hacerlo; esto es, venimos en la obligación de aclarar cuándo, realmente, aplican las disposiciones de los Arts. 416 y 1463 del Código Civil, ante, y cuándo las del citado artículo 297.*

Una "mejora útil", a la cual hace referencia el antes citado artículo 1463 del Código Civil, es aquella construcción o edificación realizada en un inmueble arrendado que tiene *estrecha relación* con el *propósito* para el cual el inmueble fue arrendado y que, en consecuencia, *aumenta la capacidad de rendimiento, o productividad, del inmueble*. Un sencillo ejemplo de ello sería la construcción de una estructura de cemento, en un inmueble dedicado al negocio de aparcamiento de automóviles, la cual es construida con el propósito de cobijar, y proteger, al encargado del mismo.

---

([4]) *Edificación* es aquella unión material de bienes muebles a inmuebles hecha por acto del hombre mediante cualquier clase de construcción. Debe tratarse de una incorporación físicamente unida al suelo e inseparable del mismo. La edificación debe suponer una nueva entidad física, económica y funcional, de destino económico y de fines específicos acorde con los intereses del propietario del suelo. "La edificación, por si misma, constituye una mejora de la finca en que se realiza, en cuanto supone un incremento de valor y a menudo de la productividad del suelo sobre el que se hizo la incorporación del edificio." (Énfasis suprimido.) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1990, T. V, Vol. 1, págs. 324–325.

Esa "mejora" de carácter permanente,(⁵) conforme las disposiciones del Art. 416 del Código Civil, ante, quedará a beneficio del arrendador al terminarse el arrendamiento; ello por razón de que la misma cualifica como una "mejora útil" *que aumenta la capacidad de rendimiento, o productividad, del inmueble dedicado al negocio de estacionamiento.* Nótese que, en relación con esta situación en específico, poco importa que el arrendatario haya construido dicha "mejora útil" permanente con, o sin, el permiso del arrendador; esto es, resulta inmaterial e impertinente que el arrendatario sea, o no, un edificante de buena, o mala, fe.

*Otra,* sin embargo, es la situación en que, no obstante existir una relación jurídica de arrendador y arrendatario, este último construye sobre el inmueble arrendado una "mejora", de tipo permanente, *que no tiene nada que ver con el propósito para el cual el inmueble fue arrendado.* Meramente a manera de ejemplo, supongamos la situación en que el arrendatario de la finca arrendada para el negocio de aparcamiento de automóviles construye en la misma un edificio de apartamentos de diez (10) pisos. En esta situación, en la cual la edificación construida no tiene relación alguna con el negocio de estacionamiento para el cual fue arrendado el inmueble, rigen las disposiciones del Art. 297 del Código Civil, ante, y el arrendatario tendrá, o no, derecho a indemnización dependiendo de si fue, o no, un "edificante de buena fe".

*En resumen,* la contestación a la interrogante respecto a cuál de los artículos del Código Civil regula esta clase de situación —construcción de edificación por el arrendatario sobre el inmueble arrendado— dependerá de si la edificación construida sobre el referido inmueble tiene, o no, relación con el propósito del arrendamiento. En otras palabras, si dicha construcción guarda relación con el propósito

---

(⁵) Las mejoras, naturalmente, pueden ser de carácter permanente o de índole removible.

para el cual el inmueble fue arrendado, regirán las disposiciones de los Arts. 416 y 1463 del Código Civil, ante. De no ser así, la disposición a ser aplicada lo será el antes citado Art. 297 del Código Civil, en cuyo caso habrá que hacer la determinación adicional si se trata, o no, de un edificante de buena fe.

En vista a lo antes expresado, resulta claro que en el presente caso —aun sin tomar, de momento, en consideración lo expresamente pactado en el contrato original de arrendamiento— el subarrendatario Labrador *no* tiene derecho a ser indemnizado por las edificaciones que él construyera en el inmueble arrendado. Conforme surge del expediente del caso, se trata de dos (2) edificaciones: una en la cual se ubicó un *mini market* con el propósito de venderle artículos de primera necesidad a los clientes de la estación de servicio, y, la segunda, la cual se construyó para el "alineamiento de las gomas" de los carros de los clientes de la referida estación. Dichas edificaciones ciertamente cualifican como "mejoras útiles" —esto es, unas que guardan *estrecha relación* con el propósito para el cual fue arrendado el inmueble en cuestión y que aumentaron la capacidad de rendimiento del negocio ubicado en dicho inmueble— cuyo costo *no* es recobrable bajo las disposiciones del antes citado Art. 416 del Código Civil.

## III

Como antes expresáramos, en el contrato original de arrendamiento otorgado entre Castrodad y Shell se pactó, de manera expresa, que todas las mejoras permanentes de que fuera objeto el inmueble quedarían "para beneficio de la Propiedad". Sabido es que lo pactado en un contrato tiene *fuerza de ley* entre las partes, siempre que dicho pacto no contravenga el orden público, la moral o la ley. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3451; *Capó Caballero v. Ramos*, 83 D.P.R. 650 (1961).

Somos del criterio que el "pacto" antes expresado, originalmente acordado entre Castrodad y Shell, *igualmente obliga a Labrador.* En *primer lugar*, estamos obligados a interpretar dicho "pacto", el cual tiene fuerza de ley entre las partes, conforme al *significado común y corriente de las palabras* en que el mismo fue plasmado en el contrato original. Entendemos que, no obstante las partes no haber especificado que ello sería de manera gratuita, la frase "para beneficio de la Propiedad" *no* puede significar otra cosa que no sea la de que el arrendador *no* tiene la obligación de indemnizar al arrendatario por las mejoras útiles, de carácter permanente, que éste realizara en el inmueble arrendado. Véase *Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 707 (1981).

Por otro lado, y como señaláramos anteriormente, en el contrato de subarrendamiento que otorgara Shell con Labrador, específicamente se hizo constar que éste no sólo tenía conocimiento del contrato original otorgado entre Castrodad y Shell sino que el contrato de subarrendamiento quedaba "sujeto a todos los términos del contrato de arrendamiento bajo el cual la compañía [Shell] tiene derecho a posesión sobre la estación".

En otras palabras, Labrador, al construir lo que él denomina "nuevas edificaciones" en el inmueble objeto del arrendamiento, tenía *pleno conocimiento* de que dichas edificaciones, de carácter permanente, quedarían "para beneficio de la Propiedad" arrendada, al vencerse el plazo de arrendamiento pactado. Mal puede alegar, ahora, que tiene derecho a retener dicho inmueble hasta tanto se le indemnice por dichas edificaciones. A esos efectos, expresa Albaladejo que:

> ...no es lícito ahora a quien lo concertó libremente revolverse contra sus propios actos y estipulaciones a pretexto de que se trata de un edificio valioso, por lo cual estima que es una ganancia usuraria, pues antes de construirlo sabía perfectamente qué le iba a corresponder. Albaladejo, *op. cit.*, T. XX, Vol. 1, pág. 685.

## IV

Erró, en consecuencia el tribunal de instancia al posponer la consideración, y solución final, de la acción de desahucio radicada por Castrodad hasta tanto se dilucidara, en vista plenaria, el alegado derecho de Labrador a ser indemnizado por las edificaciones que construyó en el inmueble que había subarrendado.

En consecuencia, estamos contestes con la mayoría de los integrantes del Tribunal de que el foro de instancia, al recibo del mandato, deberá proceder de inmediato conforme establecen las disposiciones pertinentes del Código de Enjuiciamiento Civil referentes a la acción de desahucio;[6] esto es, manteniendo presente que éste es un procedimiento especial, *de naturaleza sumaria*, en el cual "no puede un demandado utilizar el pretexto de supuestos estados o situaciones carentes de título adecuado para privar de la protección de la ley a quien ostenta el título, obligándole a que acuda al procedimiento ordinario". *C.R.U.V. v. Román*, 100 D.P.R. 318, 328–329 (1971).