EL ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., demandante y recurrido, *v.* SOCIEDAD PROTECTORA DE NIÑOS ET AL., demandados y recurrentes.

*Número:* R-70-193      *Resuelto:* 11 de octubre de 1972

846

*González, Jr., González-Oliver, Blanco Lugo & Morán* y *Fausto Ramos Quirós*, abogados de la recurrente; *Fiddler, González & Rodríguez* y *Federico Tilén*, abogados de I.B.E.C. Realty Corporation; *Gilberto Gierbolini, Procurador General* y *Ruth Tentori de Lebrón Velázquez, Procuradora General Auxiliar*, abogados del Estado Libre Asociado de Puerto Rico.

El Juez Asociado Señor Martínez Muñoz emitió la opinión del Tribunal.

La Sociedad Protectora de Niños es propietaria de una parcela de terreno en la Avenida 65 de Infantería de Río Piedras que tenía una cabida de 6054.35 metros cuadrados. En el 1958 la Sociedad le cedió esta parcela en arrendamiento a la IBEC Realty Corporation por un término de veinte años, acordándose un canon anual de $3,600.00 pagadero por anticipado. Mediante la cláusula 14 del contrato, las partes convinieron que, en caso de expropiación forzosa para el ensanche de las avenidas o calles marginales adyacentes, el canon estipulado no sería reducido y que cualesquiera sumas que se recobraran por pérdida sufrida por la arrendataria pertenecerían a ésta. La cláusula 14 lee así: ([1])

"En caso de expropiación forzosa para ensanchar las avenidas o calles marginales colindantes, no se reducirá por cantidad alguna el canon de arrendamiento y cualesquiera cantidades que se cobren por las pérdidas que sufra el arrendatario pertenecerán al arrendatario."

En el año 1966 el Gobierno expropió 352.62 metros cuadrados de la parcela arrendada, quedando ésta reducida en su cabida a 5701.73 metros cuadrados. La expropiación se llevó a cabo con el fin de ampliar las calles adyacentes. El

---

([1]) La cláusula 14 redactada en Inglés lee así:

"In case of enforced expropriations for the widening of the bordering avenues or marginal streets, rent shall not be reduced in any amount and any sums recovered for loss sustained by tenant shall belong to tenant."

Gobierno consignó $14,104.80 como valor de tasación. La Sala de Expropiaciones, después de celebrada una vista, fijó en $17,634.80, ó sea $3,530.00 adicionales, como justo valor de la parcela expropiada. Esta suma, más $990.16 por concepto de intereses, fue consignada por el Gobierno.

La IBEC reclamó como suya y la Sala de Expropiaciones le reconoció el derecho a la totalidad de la suma consignada como justo valor de la parcela expropiada basándose en los términos de la cláusula 14 del contrato de arrendamiento. Dicha Sala sostuvo lo siguiente:

"La cabida de las tres parcelas segregadas del predio arrendado es de 352.62 metros cuadrados, quedando éste reducido a 5701.7 metros cuadrados. De acuerdo con los términos del contrato, la arrendataria tenía que seguir pagando el mismo canon de arrendamiento. Para la arrendadora la reducción en área no resultaba ser pérdida económica alguna durante la vigencia del contrato. Pero para la arrendadora [sic] esa reducción significaba una pérdida en el área de estacionamiento, y en las facilidades de su empresa comercial.

Por tanto, nos vemos obligados a resolver que como consecuencia de la expropiación de la faja de terreno para la ampliación y ensanchamiento de las calles adyacentes a los terrenos arrendados es una pérdida de las que el contrato contempla y consecuentemente el dinero que por esa pérdida se recobra pertenece a la arrendataria."

A solicitud de la Sociedad acordamos revisar.

La controversia entre la Sociedad, aquí recurrente, y IBEC no envuelve la responsabilidad del Estado ni queda dicha responsabilidad afectada económicamente por cualquier determinación que hagamos en torno a la extensión del derecho sobre los fondos consignados que es la controversia que la Sociedad y IBEC nos plantean en este recurso. Ello es así, ya que no se cuestiona la razonabilidad de la valoración fijádale a la parcela expropiada.

Como punto de partida, nos parece que sirve de ayuda hacer una breve reseña de ciertos principios generales que

hemos seguido en el pasado en el campo de expropiaciones de propiedad privada.

■ Sostuvimos en *Pueblo* v. *632 Metros Cuadrados de Terreno*, 74 D.P.R. 961, 970 (1953), que un recurso de expropiación es un procedimiento *in rem*. No va dirigido contra ningún demandado en particular, sino contra la propiedad propiamente dicha y que "si bien el ejercicio del poder de expropiar extingue todos los derechos anteriores sobre la propiedad, el gobierno no expropia el interés que pueda tener ningún demandado en particular sobre la propiedad." También hemos resuelto que, de ordinario, donde el título de dominio es expropiado, "partidas tales como gastos de mudanza, costos de reinstalación del equipo, y pérdida de negocios no son compensables aun bajo un mandato constitucional como el nuestro que exige compensación por propiedad 'tomada' o 'perjudicada'." *Pueblo* v. *McCormick, Alcaide & Co.*, 78 D.P.R. 939, 965 (1956). De ello se puede razonablemente deducir que, salvo la existencia de circunstancias excepcionales, la valoración de la propiedad particular objeto de expropiación no debe de ordinario variar por el hecho que medie un contrato de arrendamiento. (Id., a la pág. 946.) En el caso de *McCormick, Alcaide & Co.*, supra, sostuvimos que (a la pág. 946):

"En tanto en cuanto el arrendamiento menoscaba el valor del título de dominio, el arrendatario debe ser compensado de la suma que represente el valor total del título de dominio y no en adición a éste."

Se trataba en dicho caso de una expropiación que como cuestión de hecho "frustraba" el fin principal del contrato de arrendamiento (que le faltaba 9 meses por expirar) asemejándose a una expropiación total de la propiedad. Se resolvió en dicho caso que cuando mediante expropiación "se destruye el propósito para el cual se otorga un arrendamiento, el contrato se da por terminado y el arrendatario no responde al

arrendador por los cánones". *Pueblo* v. *McCormick, Alcaide & Co.*, supra, pág. 967. Reconocimos allí el derecho del arrendatario a ser compensado por la terminación de su arrendamiento con motivo de la expropiación, adoptando el Tribunal la siguiente norma (id., pág. 952):

"En términos generales, cuando se expropia todo el balance de un arrendamiento, el arrendatario tiene el derecho al '. . . valor del uso y ocupación de los bienes arrendados por el resto del . . . término . . . menos el canon estipulado que el arrendatario tendría que pagar por tal uso y ocupación'."

■ La anterior regla contempla casos de expropiación *total* del bien arrendado, pero en cuanto a expropiaciones *parciales* de un bien arrendado, no existe una norma judicial o estatutaria local específica que regule la distribución de la suma consignada entre las partes interesadas.(²) Para la solución de este caso es necesario, pues, remitirnos a la cláusula 14, antes transcrita, del contrato de arrendamiento vigente entre las partes.

Las partes no cuestionan la aplicabilidad de la cláusula 14. La recurrente sostiene, en síntesis, que el alcance de la cláusula 14 del contrato es conferir un derecho a la arrendataria a *participar* de la compensación por la expropiación y no como resolvió el juez sentenciador al reconocerle a la arrendataria el derecho a la *totalidad* de la compensación sin tener en cuenta la pérdida del derecho de propiedad sufrida por la arrendadora-recurrente.

Mediante la cláusula 14, las partes acordaron que en caso de expropiación forzosa, para los fines públicos que allí se

---

(²) La Ley de Expropiación Forzosa reconoce en términos generales el derecho de toda persona que ocupare cualquier propiedad objeto de la expropiación, que tuviere o pretendiere tener cualquier interés en la misma o en los *daños* y *perjuicios* ocasionados por la expropiación, a comparecer y alegar su derecho por lo que respecta al dominio o interés que en la propiedad tuviere o reclamare (32 L.P.R.A. sec. 2906) y faculta al tribunal para dictar las órdenes que fueren justas y equitativas en relación con los gravámenes y otras cargas que pesen sobre las propiedades. (32 L.P.R.A. sec. 2907)

indican, no habría reducción del canon estipulado ". . . y cualesquiera cantidades que se cobren por las pérdidas que sufra el arrendatario pertenecerán al arrendatario."

El tribunal sentenciador sostuvo que para la arrendadora la expropiación de 352.62 metros cuadrados ". . . no resultaba ser pérdida económica alguna durante la vigencia del contrato." Ello es así, según la resolución recurrida, debido al hecho que de acuerdo con la cláusula 14 la arrendadora seguiría cobrando el mismo canon, sin rebaja, de la arrendataria. Pero, para esta última, sostuvo el tribunal a quo, la expropiación significaba una pérdida ya que el área de estacionamiento y sus facilidades serían reducidas. Concluyó entonces que esa era una pérdida de las contempladas en el contrato adjudicando que "la única persona con derecho a recibir la suma [$17,634.80] es la arrendataria." (³)

█ No estamos de acuerdo. La cláusula 14 del contrato relativa a la obligación de la arrendataria de continuar pagando el canon estipulado en su totalidad en realidad recoge contractualmente la doctrina mayoritaria que impera en los Estados Unidos al efecto de que la expropiación parcial de los bienes arrendados, en ausencia de disposición contractual o estatutoria que otra cosa provea, no afecta la obligación del arrendatario de pagar el canon convenido. 49 Am. Jur.2d sec. 589; 3 A.L.R.2d 286, 328–332 (Anotación *Elements and measure of lessee's compensation for taking or damaging leasehold in eminent domain*); 48 Va. L. Rev. 477, 479–482, 493–496, Note, 43 Iowa L. Rev. 279–287 (1958); 2 Nichols, sec. 5.23[3].

De ese modo las partes resolvieron contractualmente de antemano la posibilidad de controversias sobre disminución de la renta en caso de expropiación parcial, cuestión ésta que dejamos sin resolver en *Pueblo* v. *McCormick, Alcaide & Co.* (supra, a la pág. 967, escolio 25).

---

(³) Los $17,634.80 representan el importe consignado para cubrir el justo valor de la parcela expropiada.

La controversia no gira, pues, sobre el derecho de la arrendataria a una disminución de la renta, sino sobre su alegado derecho a la totalidad del valor de la parcela expropiada basado en la cláusula 14 que, luego de establecer que no se reduciría la renta en caso de expropiación parcial, dispone a renglón seguido:

". . . y cualesquiera cantidades que se cobren por las pérdidas que sufra el arrendatario pertenecerán al arrendatario."

El contrato de arrendamiento cubría un área de seis mil y pico de metros cuadrados por un término original de veinte años y un canon anual de $3,600.00. Disponía también que a opción de la arrendataria, sujeto a ciertas condiciones, el término podía ser extendido por quince (15) años más por un nuevo canon que mutuamente acordaran las partes. En cuanto a mejoras y alteraciones se acordó que las mismas requerían la aprobación previa de la arrendadora y que las edificaciones o mejoras pertenecerían a la arrendadora, sin derecho la arrendataria a indemnización, excepto que la arrendataria se obligaba a retirarlas a su costo de mediar una solicitud de la arrendadora a esos efectos al finalizar el término del arrendamiento.

La arrendataria sostiene, en efecto, que la cláusula de expropiación no lee como dice, sino que donde lee "cualesquiera cantidades que se cobren por las pérdidas que sufra el arrendatario" quísose decir:

". . . y cualquier suma que se recobre en la expropiación pertenecerá a la arrendataria."

Ello equivaldría a sostener que con arreglo a la cláusula de expropiación, según la lee la arrendataria, la arrendadora le traspasó no sólo el uso y disfrute, sino el título de dominio de la parcela expropiada, valorada por el tribunal en $17,634.80, por el precio de $2,675.00 pagadero en 12 años y 8 meses a razón de $210.00 anuales aproximadamente, que representa la renta proporcional anual sobre la parcela expro-

piada que la arrendataria viene obligada a pagar a la arrendadora por el término que faltaba del contrato. [4]

Este anómalo resultado desnaturalizaría el sentido del contrato acordado por las partes atribuyéndole un efecto radicalmente distinto del que revela el contrato de arrendamiento en sus distintas cláusulas consideradas las unas con las otras. Se trata de un contrato de arrendamiento, no de venta. La frase "cualesquiera cantidades que se cobren por las pérdidas que sufra el arrendatario" no sostiene el alegado derecho de ésta a la totalidad del justo valor de la parcela expropiada. Esta interpretación sería de por sí inconsistente con otras cláusulas del contrato que le confieren a la arrendadora la propiedad de toda mejora o edificación que construya allí la arrendataria.

■ Dicha interpretación es inaceptable pues amplía las obligaciones del contrato expandiéndolas para cubrir derechos y obligaciones de naturaleza y alcance distintos al que las partes consintieron, vulnerando así el principio consignado de manera clara y expresa en nuestro Código Civil que cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquellos que fueron objeto del contrato. Art. 1235, 31 L.P.R.A. sec. 3473.

■ En este caso se expropió el título de dominio sobre una parcela de 352.62 metros cuadrados, parte de una de mayor cabida ocupada en arrendamiento por la recurrida. Estrictamente hablando al arrendatario no se le reconoce, de ordinario, en nuestra jurisdicción el derecho a recobrar por daños (*losses*) por partidas tales como gastos de mudanza, costo de reinstalación de equipo, pérdida de negocios, plusvalía, etc. En lo que atañe al gobierno la compensación que

[4] $$\frac{\$3,600.00 \ (\text{renta contractual})}{6,054.35 \ \text{m/c} \ (\text{área arrendada})} = \$.5947 \ \text{por m/c};$$

352.62 m/c (área expropiada) x $.5947 = $210.00.

deba pagar por el título de dominio generalmente no es afectada por el hecho de que la propiedad está sujeta a un contrato de arrendamiento. *Pueblo* v. *McCormick, Alcaide & Co.* supra. En lo que concierne al arrendatario su derecho a indemnización por tales partidas de daños debe ser objeto de contratación entre el arrendador y el arrendatario y en el caso que consideramos no lo fue. Si las partes hubieran considerado que tales partidas de daños eran recobrables para la arrendataria contra los fondos de la expropiación, fácilmente pudieron haberlo hecho constar así específicamente. Vale señalar que la arrendataria no los ha reclamado aquí. Ello no es de extrañarse ya que la expropiación envolvía tres pequeños trozos de terrenos con un área total de 352.62 metros cuadrados sin ninguna edificación ni equipo instalado. El daño por pérdida de negocios y plusvalía parecería ser, a lo más, insignificante, si no demasiado remoto e improbable.

La cuantía fijada por el tribunal sentenciador—representada por el valor total de la parcela expropiada—como pérdida sufrida por la arrendataria no encuentra apoyo ni en la cláusula de expropiación ni en ninguna otra base plausible.

Ya hemos sostenido que la cláusula 14 no tuvo el alcance ni abarca derecho de la arrendataria a compensación por partidas especiales por concepto de mudanza, costo de instalación de equipo, perdida de negocios, plusvalía, etc. Más bien la cláusula parte del supuesto de que la recurrida, en virtud de sus relaciones arrendaticias—término del contrato, mejoras, pago de contribuciones territoriales, etc.—tiene un interés económico indeterminado sobre al montante del valor de la parcela expropiada. En ausencia de una expresión específica en el contrato, es necesario que le fijemos un valor económico al referido interés.

En otras palabras, nuestra misión es determinar la suma a que tiene derecho la arrendataria por la privación del uso y disfrute de una parte, aunque pequeña, del área arrendada durante el resto del término de su arrendamiento

en base a que el contrato de arrendamiento continúa en vigor sin reducción alguna en el canon.

Al referirse al problema de la distribución de los fondos de la expropiación entre el arrendador y el arrendatario, se dice en Orgel, *Valuation Under Eminent Domain*, Vol. I, 2d Ed., sec. 121, pág. 521:

"Este asunto ha ocasionado más dificultades a las cortes que ningún otro problema de prorrateo. Muy frecuentemente la cuestión gira alrededor del punto de si el arrendatario continúa o no obligado a pagar el canon durante el resto del término del arrendamiento, aun después de la expropiación. Si la obligación subsiste, el principio de indemnización exige que le sea pagada una porción de la compensación suficiente para indemnizarle por su obligación contínua. Si ésta cesa, no se requiere que sea compensado por esta partida, pero puede que aún tenga derecho a la diferencia entre el valor del arrendamiento (*rental value*) y el canon estipulado (*rent reserved*)."

En el presente caso la arrendataria pactó pagar el mismo canon sin reducción alguna, pero no renunció al derecho a participar en los fondos de la expropiación. El punto es cuál es la medida de la indemnización.

Aparte de otros daños—gastos de mudanza, mejoras, reinstalación de equipo, etc.—no envueltos ni reclamados aquí, el arrendatario puede sufrir una pérdida con motivo de la expropiación parcial por dos razones.

La primera, porque el valor del arrendamiento puede mermar debido al hecho de que la renta convenida (*contract rent*) sea menor que la renta razonable en el mercado (*economic rent*) que pudiera obtenerse en un subarrendamiento. *Korf* v. *Fleming*, 239 Iowa 501, 32 N.W.2d 85, 33 A.L.R.2d 270 (1948); Laurence Sando, *Appraisal of Leasehold Interests*, Third Annual Institute of Eminent Domain, Southwestern Legal Center (1961); Schmutz, *Condemnation Appraisal Handbook*, págs. 151–157 (1949); Orgel, obra citada, sec. 124, pág. 530.

En *Pueblo* v. *McCormick* supra, págs. 952–953, nos referimos a la cuestión de la suma a que tenía derecho la arrendataria por la terminación de su arrendamiento con motivo del procedimiento de expropiación. Expresamos allí que "[E]n términos generales, cuando se expropia todo el balance de un arrendamiento, el arrendatario tiene derecho al valor del uso y ocupación de los bienes arrendados por el resto del . . . término . . . menos el canon estipulado que el arrendatario tendría que pagar por tal uso y ocupación."

Aunque en *McCormick* se trataba de la expropiación que "frustraba" el fin principal del contrato de arrendamiento asemejándose a una expropiación "total", la medida de daños, según la regla seguida en la mayoría de las jurisdicciones en los Estados Unidos, es la misma que cuando se trata de expropiaciones parciales de la propiedad objeto del contrato. *Committee on Condemnation and Condemnation Procedure*, Am. Bar. Asso., 1970 Report; Polasky, *The Condemnation of Leasehold Interests*, 48 Va. L. Rev. 477, 493–494 (1962); Note, *Condemnation and the Lease*, Iowa L. Rev., Vol. 43, 279–287; Schmutz, obra citada; *United States* v. *31.07 Acres of Land, etc.*, 189 F.Supp. 845, 848 (1960); 1 Orgel, obra citada, sec. 126, págs. 536–541; Anotación, 3 A.L.R.2d 286, 296. Esta es la regla que reconoce el derecho del arrendatario a recibir el "valor en el mercado" del arrendamiento como compensación por la pérdida prematura, total o parcial, de su arrendamiento.

Orgel, en su obra citada, pág. 534, apunta que el número relativamente pequeño de casos que niegan compensación al arrendatario bajo contratos de arrendamiento de alguna duración demuestra que las cortes están receptivas a suponer que la renta económica excede .del canon convenido.([5]) En *Korf* v. *Fleming* supra, se señala que generalmente el valor en el mercado es el criterio que debe seguirse en la valoración

---

([5]) Véanse *Korf* v. *Fleming*, supra; 43 Iowa L. Rev. 279, 284, 285.

del interés arrendaticio, aunque reconoce que con frecuencia éste no ofrece una base razonable para prorratear la suma adjudicada en la expropiación. En Jahr, *Eminent Domain Valuation and Procedure*, Ed. 1957, sec. 130, pág. 194, se hace un señalamiento similar:

"La doctrina de los tribunales en el sentido de que el valor de un arrendamiento ha de fijarse de acuerdo con su 'valor en el mercado' probablemente plantea un problema tan complicado como el problema original. ¿Cómo ha de tasarse ese derecho a partir del 'valor en el mercado'? Ciertamente hay muy pocas ventas de arrendamientos que sean perfectamente comparables a la que se interesa evaluar. No se trata de tasar un inmueble, en cuyo caso podrían hallarse ventas de propiedades comparables en la vecindad. Cada arrendamiento es *sui generis*. No obstante, los tribunales han sostenido que el valor en el mercado es la medida de la compensación para el arrendatario. El valor en el mercado tendrá que determinarse por reconocidos expertos en la venta de arrendamientos."

■ La expresada norma de valoración no le ayuda a la recurrida. Esta tampoco la invoca. Más aún, los autos carecen de base racional alguna que sirva de apoyo a una conclusión al efecto de que el valor total del título de dominio del terreno expropiado coincide con el valor en el mercado de su interés arrendaticio, ni que se justifique dejar inalterada la suma adjudicádale por la sala de instancia. Para participar en los fondos recaía sobre la recurrida el peso de la prueba para establecer su pérdida. *Pueblo* v. *McCormick* supra, pág. 952, escolio 9; Jahr, obra citada, pág. 194; *United States* v. *31.07 Acres of Land, etc.*, supra; *Korf* v. *Fleming* supra. Ante la ausencia de datos relevantes en los autos, no estamos dispuestos a suponer que la renta económica exceda del canon contractual y mucho menos en condiciones de fijar una cuantía para indemnización de la recurrida por ese concepto.

La segunda partida o concepto de daños que puede sufrir en estos casos el arrendatario es una cantidad equivalente al valor actual de los cánones pagaderos en el futuro. Es decir,

en vista de que el arrendatario continuará en el futuro obligado a pagar el canon total acordado, pero no estará disfrutando del total de la propiedad que acordó arrendar, tiene derecho a una compensación por esas pérdidas futuras. *Dept. of Public Works & Buildings* v. *Metro. Life Ins. Co.*, 192 N.E.2d 607, 613 (Ill. App. 1963); *Sacramento & San Joaquin Drainage Dist.* v. *Truslow*, 270 P.2d 928, 933 (Cal. Dist. Ct. App. 1954); *City of Pasadena* v. *Porter*, 257 Pac. 526, 528 (Cal. 1927); Schmutz, obra citada, pág. 153. En el récord sí hay base para conceder esta segunda partida.

■ Ya hemos visto que el terreno expropiado guarda al terreno total la misma proporción que $210 guarda a $3,600 (el canon anual convenido). Partiendo de una duración de 12 años 8 meses de arrendamiento futuro y asumiendo que el arrendatario hubiese invertido el valor en que ha menguado el uso de la propiedad arrendada al tipo de 6 por ciento anual, procedamos a aplicarle la fórmula que describe Schmutz. De la tabla que aparece en la obra de Schmutz, a la pág. 292, vemos que el factor correspondiente a un período de 12 años es 8.384, siendo el factor correspondiente a 13 años 8.853. Interpolando obtenemos el factor 8.697, correspondiente a un período de 12 años 8 meses. El producto de 8.697 y la cantidad de $210 antes mencionada es $1,826.37, cantidad ésta la que en justicia corresponde al arrendatario. Naturalmente, el remanente pertenece a la arrendadora, dueña del terreno, aquí recurrente.

En consecuencia, somos de opinión que de la suma de $17,634.80 fijada por el tribunal de instancia como justo valor de la parcela expropiada le corresponde a la recurrida la cantidad de $1,826.37 y el remanente de $15,808.43 pertenece a la recurrente. En cuanto a la partida de intereses consignada por el Gobierno—montante a $990.16—ésta se distribuirá en la misma proporción que las cantidades que le corresponda a las partes según lo indicado, es decir, $102.98 para la recurrida y $887.18 para la recurrente.

*En tal virtud, se modificará la sentencia recurrida conforme lo antes expresado.*