*58 TEXTO COMPLETO DE LA SENTENCIA
Acude ante este Tribunal mediante recurso de Certiorari la parte peticionaria, Guamaní Auto Sales, Inc. (en adelante, Guamaní Auto). Solicita que revisemos la Resolución dictada por el Tribunal de Primera Instancia, Sala de San Juan (en adelante, TPI) el 6 de diciembre de 2004 y notificada a las partes el 9 de diciembre de 2004. En la referida Resolución se desestimó las alegaciones del Sr. Vicente López Deyá y de Guamaní Auto.
Por los fundamentos que exponemos a continuación, confirmamos la Resolución recurrida.
I
El 18 de marzo de 2002, la Autoridad de Carreteras y Transportación de Puerto Rico (en adelante, la Autoridad) presentó una petición de expropiación forzosa para adquirir dos parcelas de terreno para el Proyecto AC-014961, fase 2, Mejoras a la Carretera PR149 en Juana Díaz. En esa misma fecha depositó la cantidad de $321,500.00 como justa compensación por los solares a expropiarse. La propiedad objeto de la expropiación estaba sujeta con un contrato de arrendamiento a favor de Guamaní Auto.
La parte con interés, Félix Schmidth Colón, presentó el 16 de abril de 2002 Moción Urgente Solicitando Retiro de Fondos Consignados. Alegó, entre otras cosas, que lo consignado no correspondía a la justa compensación que garantiza la Constitución.
Guamaní Auto compareció en autos el 10 de junio de 2002 mediante Moción Urgente en Auxilio de Jurisdicción y Solicitud de Paralización de Pago del Dinero Consignado. Expresó tener derecho a recibir una porción de lo consignado por la Autoridad en el tribunal por concepto de justa compensación. El 21 de mayo de 2003, el peticionario presentó su contestación a la petición de expropiación forzosa. Levantó como defensa que la compensación depositada no constituye la justa compensación que garantiza la Constitución. Adujo que no se tomó en consideración al calcularse la misma el aumento en el valor de la propiedad que produce el arrendamiento. Sostuvo que, además del dinero consignado para el pago de la propiedad, se tenía que depositar una partida adicional de $150.000.00 para cubrir el valor del contrato de arrendamiento y una partida de *59 $50,000.00 para indemnizar los daños y perjuicios sufridos por la peticionaria como consecuencia de la expropiación.
Luego de varios trámites procesales no pertinentes a la controversia planteada, el 5 de octubre de 2004, la Autoridad de Carreteras y la parte con interés Sr. Félix Schmidth suscribieron un acuerdo transaccional por la cantidad de $382,445.00, el cual fue sometido para la aprobación del Tribunal el 28 de octubre de 2004. El TPI dictó sentencia acogiendo la estipulación y desestimó los reclamos de la arrendataria, Guamaní Auto. Dictaminó el TPI que esta parte no tenía derecho a participar de la compensación otorgada al titular del predio, ni tampoco a reclamar al Estado una compensación en su condición de arrendataria del bien expropiado.
Inconforme con lo resuelto por el Tribunal a quo, la peticionaria presentó el 11 de enero de 2005 ante este Tribunal el recurso de Certiorari que nos ocupa. En específico le imputa al TPI la comisión de los siguientes cinco errores:

“1) Erró el Tribunal de Primera Instancia al determinar que el Peticionario, Guamaní Auto Sales, Inc., no tiene derecho a compensación sin celebrar la vista en sus méritos.

2) Erró el Tribunal de Primera Instancia al determinar que el Peticionario, Guamaní Auto Sales, Inc., no tiene derecho a compensación de la parte con interés Félix Schmidth Colón, sin celebrar la vista en sus méritos.

3) Erró el Tribunal de Primera Instancia al determinar que el peticionario Guamaní Auto Sales Inc., no tiene derecho a que se le compense por las mejoráis] realizadas al inmueble expropiado sin celebrar la vista en sus méritos.

4) Erró el Tribunal de Primera Instancia al determinar que el Peticionario Guamaní Auto Sales, Inc, al considerarlo edificante de mala fe sin celebrar la vista en sus méritos.

5) Erró el Tribunal de Primera Instancia al determinar que no existe un cobro de lo indebido por parte de Felix Schmith Colon, el cual debe devolverse a Guamaní. ”

II
La Constitución del Estado Libre Asociado de Puerto Rico en su Art. II sección 7 reconoce como “derecho fundamental del ser humano, el derecho a la vida, a la libertad y al disfrute de la propiedad.” Añade, además, dicha sección 7 que “[njinguna persona será privada de su libertad o propiedad sin un debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes.” Por su parte, el Art. n, Sec. 9 de la Constitución, faculta al E.L.A. a apropiarse de propiedad privada con fines o propósitos públicos. Dicha sección establece específicamente que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. ”
La facultad de expropiación del Estado es un atributo inherente y necesario de la soberanía y es superior a todos los derechos de propiedad. Adm. de Terrenos v. Nerashford Dev. Corp., 136 DPR 801 (1996); ELA v. Registrador, 111 DPR 117 (1981); Pueblo v. 632 Metros Cuadrados de Terreno, 74 D.P.R. 961 (1953). El pago de la justa compensación se determina judicialmente conforme al procedimiento especial establecido en la Ley de Expropiación Forzosa, Ley de 12 de marzo de 1903, 32 L.P.R.A. 2907; Constitución del Estado Libre Asociado de P.R., Art. II sec. 9. El Estado deposita la compensación a favor del dueño y de cualquier persona que tenga derecho a participar de ella, conforme a las normas aplicables, según contempladas en la, referida Ley de Expropiación Forzosa, 32 L.P.R.A. sees. 2905 y 2907, y las Reglas 58.3 y 58.9 de las de Procedimiento Civil de P.R, 32 L.P.R.A. Ap. III, R. 58.3 y 58.9.
*60 Presentada la declaración de adquisición y efectuado el depósito en el tribunal de la suma estimada como compensación, el título de dominio de la propiedad queda investido en el expropiador. Planta de Cal Hicaco v. Tribunal Superior, 103 D.P.R. 385 (1975); Pueblo v. 632 Metros Cuadrados de Terreno, supra; Pueblo v. Franceschi, 72 D.P.R. 554 (1951); Pueblo v. Registrador, 70 D.P.R. 260 (1949). El título que se adquiere mediante la expropiación no se deriva del título del anterior dueño, sino que es uno nuevo, independiente y absoluto. Pueblo v. 632 Metros Cuadrados de Terreno, supra, pág. 970; ELA v. Registrador, supra, pág. 119.
La inscripción de dominio a favor del Gobierno se hace libre de todo gravamen ... (la expropiación forzosa) extingue todas las cargas y derechos anteriores sobre el bien expropiado, los cuales se convierten ... en derechos sobre el justo precio ... los asientos de cargas, gravámenes, derechos reales o limitaciones que graven el dominio o derecho expropiado, serán objeto de cancelación ... lo expropiado queda libre de toda carga, gravamen o limitación, pues la expropiación las extingue, transformándose la titularidad sobre las mismas en un derecho sobre el dinero obtenido como justo precio de la expropiación. ELA v. Registrador, supra, págs. 120-121.
La responsabilidad fundamental del gobierno en los procedimientos de expropiación consiste en depositar una compensación justa. No es de su interés o competencia intervenir en la manera en la que las distintas partes con interés se dividen la compensación depositada. E.L.A. v. Sociedad Protectora, 100 D.P.R. 844, 848 (1972); Direct Mail Services v. Best, 729 F.2d 672, 675-76 (10th Cir. 1984). Sin embargo, el gobierno tiene la obligación de hacer un esfuerzo razonable para incluir como demandados a todas las personas que pudieran tener interés en los bienes expropiados. Pueblo v. 632 Metros Cuadrados, supra, a la pág 97. Cumplida su obligación de realizar un esfuerzo razonable para incluir como partes con interés en el pleito de expropiación a toda persona que pueda tener un reclamo legítimo sobre la compensación debida, sólo le resta depositar la compensación que el tribunal determine. Pueblo v. McCormick, supra, pág. 947; Pueblo v. 632 Metros Cuadrados, supra, a la pág 971; Direct Mail Services v. Best, 729 F.2d 672, 675 (10th Cir. 1984).
La doctrina acogida por nuestro Tribunal Supremo para valorizar la justa compensación a la que tiene derecho el dueño de un predio expropiado, es la cantidad que representa el valor de la propiedad al momento de la incautación a base de su precio en el mercado. Nuestra jurisprudencia ha utilizado el concepto de valor en el mercado como guía para determinar si una compensación es justa. La utilización de este método responde al principio fundamental de que la compensación que el Estado pague sea por la finca expropiada y no por los diferentes intereses en ella. Nichols, infra, sec. 12D.04[3] a las págs. 12D-45 a 12D-46; Administración de Terrenos de P.R. v. Nerashford Development Corp., supra; Pueblo v. Huyke, 70 D.P.R. 754, 757 (1950). El tribunal, al determinar el valor en el mercado de una finca, debe tomar en consideración todo elemento o indicador que un comprador prudente consideraría. Nichols, The Law of Eminent Domain, 3ra ed. 1993, sec. 12B.03[2], pág. 12B-8. El término valor en el mercado lo definió el Tribunal Supremo de Puerto Rico en Pueblo v. Huyke, supra, a la pág. 757 como:

“el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquél en que un vendedor, en las mismas circunstancias, estaría dispuesto a vender, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere dedicarlo dentro de un futuro razonablemente cercano. ’’

Acorde con lo anterior, el Tribunal Supremo ha expresado, además, que la fijación de la justa compensación requiere una hábil sincronización de varios factores, y en última instancia, un sano ajuste entre el derecho de los propietarios y las necesidades de la comunidad. E.L.A. v. Fonalledas Córdova, supra; Martínez Rivera v. Tribunal Superior, 85 D.P.R. 1 (1962).
En casos de expropiación forzosa, el Estado no tiene que pagar por las oportunidades que el dueño pueda perder como resultado de la expropiación, por costos de mudanza, por la pérdida de negocios mientras se muda, *61 ni por pérdidas futuras o la pérdida de la plusvalía proveniente de la ubicación de la propiedad. Pueblo v. McCormick, supra, a la pág. 958; Olivero v. Autoridad, 107 D.P.R. 301, 307 (1978). United Status v. Petty Const, 327 US 372 (1946). El valor en el mercado de la finca debe realizarse sin tomar en cuenta gravámenes u otros derechos reales pertenecientes a personas distintas al dueño. Administración de Terrenos de P.R. v. Nerashford Development Corp., supra, a la pág. 808. El Tribunal Supremo ha reiterado en numerosas ocasiones que:
“Un recurso de expropiación es un procedimiento in rem. No va dirigido contra ningún demandado en particular, sino contra la propiedad propiamente dicha. Si bien el ejercicio del poder de expropiar extingue todos los derechos anteriores sobre la propiedad, el gobierno no expropia el interés que pueda tener ningún demandado en particular sobre la propiedad. ” Pueblo v. McCormick, supra, citando a Pueblo v. 632 Metros Cuadrados, supra; ELA v. Registrador, supra; Olivero v. Autoridad, 107 D.P.R. 301, 306 (1978); E.L.A. v. Sociedad Protectora, 100 D.P.R. 844, 849 (1972). Id.
El lenguaje de nuestra Constitución, relativo a la obligación del Estado de compensar cuando se tome o pequdique la propiedad, no exige que el gobierno pague al dueño su valor total y además pague a un arrendatario por su interés. Pueblo v. McCormick, supra, a las págs. 948-49. La existencia de un contrato de arrendamiento, de ordinario no afecta la justa compensación. Se calcula como si dicho contrato no existiese. E.L.A. v. Sociedad Protectora, supra, pág. 849; Pueblo v. McCormick, supra, a la pág. 946. El Tribunal Supremo, sin embargo, reconoce que en circunstancias extraordinarias puede tomarse en cuenta la existencia de un arrendamiento para determinar la justa compensación. Así lo señaló en el caso de Adm. de Terrenos v. Nerashford, supra, a la pág. 812:
En casos extraordinarios, la existencia del contrato de arrendamiento aumentará el atractivo que la finca tenga para un comprador, por lo que éste probablemente pagaría más por la finca que si no existiera el contrato. Esto sucedería, por ejemplo, si el arrendatario tiene solvencia económica del alquiler. En tal caso la existencia de este contrato “extraordinario” sí tendría que tomarse en cuenta al fijar el valor en el mercado de la finca constitutivo de la justa compensación que el Estado tiene que pagar.
Salvo la concurrencia de circunstancias excepcionales, la valoración de la propiedad objeto de expropiación no debe variar por el hecho de que medie un contrato de arrendamiento. Adm. de Terrenos v. Nerashford, supra, a la pág. 812. Ahora bien, cuando procede que se tome en consideración este contrato, se paga más, no porque se añadan partidas adicionales al valor de la finca, sino debido a que esas circunstancias particulares aumentan su valor en el mercado. Id., a la pág. 813. El Estado incurriría en responsabilidad separada, adicional y subsidiaria frente al arrendatario si dejare de cumplir con alguna otra obligación, como sucedería si no fuese diligente en incluirlo como parte con interés en el pleito. Pueblo v. McCormick, supra.
El arrendatario no tiene derecho al valor en el mercado del contrato. Tampoco tiene derecho a los daños y pejjuicios que le ocasione la privación de su propiedad mediante el proceso de expropiación. Debe tenerse presente que en los casos de expropiación, el arrendamiento expira el día en el que se efectúe la expropiación y el arrendador quedará relevado de cualquier responsabilidad bajo este contrato con posterioridad a esta fecha. Id.
En lo que concierne al arrendamiento de cosas, una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. Artículo 1433 del Código Civil de Puerto Rico, 31 L.P.R.A. § 4012. El arrendatario tendrá, respecto de las mejoras útiles y voluntarias, el mismo derecho que se concede al usufructuario. Artículo 1463 del Código Civil de Puerto Rico, 31 L.P.R.A. § 4012 31 L.P.R.A. 4070. Dispone el Artículo 416 del Código Civil de Puerto Rico, que “[e]l usufructuario podrá hacer en los bienes objeto del usufructo las mejoras útiles o de recreo que tuviere por conveniente, con tal que no altere su forma o sustancia, pero no tendrá por ello derecho a indemnización. No obstante, podrá retirar dichas mejoras si fuere posible *62 hacerlo sin detrimento de los bienes. ” Artículo 416 del Código Civil de Puerto Rico, 31 L.P.R.A. § 4012 31 L. P.R.A. see. 1527. El Código le confiere al arrendatario el mismo tratamiento que al usufructuario. Este podrá hacer las mejoras útiles y voluntarias como si fuera un edificante de mala fe, con las consecuencias que el Artículo 298, 31 L.P.R.A. 1165, provee: pierde lo edificado, plantado o sembrado sin derecho a indemnización.
Conforme a los citados Artículos 416 y 1463, el arrendatario que construya o edifique de buena fe en el bien inmueble objeto del arrendamiento, no tendrá derecho a indemnización por mandato expreso del trascrito Artículo 416, en relación con las mejoras útiles de carácter permanente que construyere en el inmueble arrendado. Como ya se dijo, el Código Civil asemeja el arrendamiento al usufructo en cuanto a este extremo. No obstante, podrá retirar de dicho inmueble las mejoras que puedan ser objeto de remoción. Castrodad v. Shell Co., 140 D.P.R. 736.
Por otro lado, la doctrina civil del cobro de lo indebido que levanta en su escrito la parte peticionaria, tiene su origen en el remoto derecho romano. Fue adoptada por el Código Civil español, y de esta forma se incorporó posteriormente a nuestro acervo jurídico. El Artículo 1795 de nuestro Código Civil, 31 L.P.R.A. see. 5121 et seq., regula esta figura en los siguientes términos: “[cjuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla. ”31 L.P.R.A. see. 5121 Véase además, Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991); E.L.A. v. Asoc. Empleados Obras Pub. Mun., 126 D.P.R. 320 (1990). La obligación de restitución que instituye esta disposición legal no nace de la voluntad contractual de las partes. El pago tiene que ser satisfecho indebidamente, por error de hecho o equivocación y no por mera liberalidad. Aulet v. Depto. Servicios Sociales, supra.
Para que se configure la teoría del cobro de lo indebido es necesaria la concurrencia de tres requisitos. Estos son: (1) que se produzca un pago con la intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o existiendo, sea por una cuantía menor a la pagada; y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto.
Cuando el pago es producto de un error de derecho, no procede la devolución de lo indebidamente pagado. Aulet v. Depto. Servicios Sociales, supra. El error de derecho ocurre cuando la persona que realiza el pago lo hace amparado en la creencia de que éste le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago o por interpretación errónea del derecho aplicable. Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998); Aulet v. Depto. Servicios Sociales, supra. La doctrina del error de derecho exime a la persona que recibió el pago indebido de la devolución de lo pagado, aun cuando se trate de fondos públicos. Aulet v. Depto. Servicios Sociales, supra; A.C.A.A. v. Bird Pinero, 115 D.P.R. 254 (1985); Cartagena v. E.L.A. 116 DPR 254 (1985). El "error de hecho", por el contrario, se refiere a quien obra a base de unos hechos que no son los verdaderos. También debemos entender que se comete este tipo de error cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite, esto es, cuando se comete lo que popularmente se denomina como " error humano". Cartagena v. E.LA., supra.
Con el beneficio de las normas de derecho antes analizadas y la comparecencia de las partes en este caso, procedemos a resolver.
III
Por estar íntimamente relacionados, consideramos conjuntamente el primer y segundo error.
Surge de los autos que el contrato de arrendamiento entre la parte peticionaria y la parte con interés, Félix Schmidth, estaba vigente al momento de producirse la expropiación instada por la Autoridad. En vista de ello, Guamaní Auto expresó tener derecho a participar del dinero consignado por la Autoridad como justa compensación. Indicó que la cantidad depositada no satisface el requerimiento constitucional de justa *63 compensación, toda vez que en la valorización de la misma no se tomó en consideración el contrato de arrendamiento que grababa la finca. No le asiste la razón.
El Foro de Instancia actuó correctamente al desestimar la reclamación de Guamaní Auto. El dinero consignado por la Autoridad estaba destinado a pagar por la propiedad expropiada y no por los gravámenes que existían sobre ella. Como expresamos anteriormente, nuestro Tribunal Supremo ha reconocido jurisprudencialmente el concepto del valor del mercado como guía para hacer la determinación de la justa compensación, pero sin tomar en consideración cualquier gravamen que afecte la propiedad. En vista de ello, el Estado no viene obligado a pagar una suma adicional por concepto del arrendamiento existente, ni tampoco por los daños, si alguno, que pueda resultar de su terminación por razón de la expropiación. Nótese que por disposición de ley, la expropiación pone fin a cualquier contrato que afecte el inmueble, sin consecuencia legal alguna para el Estado ni para el titular del predio. En tal sentido, la terminación opera como si se produjera como consecuencia del cumplimiento del término de vigencia contemplado en el contrato. De la misma manera que la terminación de una relación contractual por ese motivo no genera responsabilidad para el arrendador por los daños o pérdidas que tal situación provoque al arrendatario, tampoco existe esa responsabilidad en circunstancias como las de una expropiación. En ambos eventos, la terminación del contrato se produce de manera legal. Es un principio elemental del derecho de contrato que debe entenderse implícito en ellos las leyes vigentes en nuestra jurisdicción. Art. 1207 del Código Civil, 32 L.P.R.A. § 3372.
Hemos señalado que sólo en casos extraordinarios es posible tomar en cuenta un arrendamiento para fines de valorizar la propiedad expropiada. Sin embargo, cuando ello ocurre, no se paga una partida adicional por el arrendamiento, sino que ello se refleja en un aumento en el valor de la propiedad. En tal caso, le corresponde al arrendatario participar de la suma depositada en la proporción que determine el Tribunal o lo acuerden las propias partes. Claro está, que si tales circunstancias extraordinarias que justifiquen el aumento en la valorización operan exclusivamente a favor del arrendador, es éste quien posee la legitimación activa para formular dicho reclamo y no el arrendatario. Ello ocurre, por ejemplo, cuando se trata, como se sugiere en este caso, de la existencia de un contrato sumamente lucrativo para el arrendador y de prolongada duración. El arrendatario estaría activamente legitimado a reclamar participación en la cantidad depositada si el aumento en la valorización de la propiedad está dirigido a atender las situaciones excepcionales contempladas a su beneficio. Esto podría ocurrir, por ejemplo, cuando se plantea la imposibilidad de trasladar el negocio a otro lugar, por razón de permisos o zonificaciones o por la complejidad de la operación, entre otras cosas. En el caso de autos, no se desprende de las alegaciones ni los hechos narrados por la propia peticionaria circunstancias extraordinarias que justifiquen tomar en cuenta el arrendamiento como un criterio adicional en la valorización de la propiedad. Se trata de un arrendamiento típico para el negocio de venta de automóviles. A la misma vez es una operación que no plantea, de ordinario, dificultades excepcionales para su relocalización, toda vez que no requiere de compleja infraestructura o de especializada permisología. Es un tipo de negocio común y frecuente en nuestros pueblos y ciudades.
Claro está, que la terminación de cualquier contrato de arrendamiento, como lo es éste, genera para el arrendatario dificultades, inconvenientes y hasta pérdidas incidentales en su relocalización. Lo mismo le hubiera acarreado de haberse producido la terminación del contrato por otras causas, igualmente válidas. Se trata de dificultades típicas para cualquier operación de negocios que experimente la misma situación. Si tales fueran las consideraciones que plantearan la existencia de circunstancias extraordinarias, virtualmente habría que tomar en cuenta en la casi totalidad de los casos estos gravámenes sobre la propiedad. Esta sería entonces la norma y no la excepción. Por otro lado, dada la inexistencia de circunstancias extraordinarias que ameriten someterse al rigor de un proceso evidenciarlo con miras a determinar si procede un aumento en la valorización y en beneficio de quién, no vemos la necesidad de atender este asunto mediante vista evidenciaría.
La peticionaria plantea como tercer error que incidió el TPI al determinar que no se le tiene que indemnizar por lo invertido en las mejoras realizadas en la propiedad objeto del contrato de arrendamiento Como cuarto *64 error alega que incidió además el Tribunal al considerarlo edificante de mala fe. Tampoco se cometieron estos errores. En el contrato suscrito por las partes el 3 de diciembre de 1996, se especificó en la sección quinta lo siguiente:

“[e]l arrendatario podrá introducir mejoras y ampliar el objeto de este arrendamiento a su costo, pero éstas quedaran a beneficio del arrendador al finalizar el presente contrato sin que tenga que pagar cantidad alguna por tal concepto. ”

Nótese que se pactó específicamente que terminado el contrato de arrendamiento, las mejoras permanecerían para beneficio del arrendador sin que éste tuviera que rembolsar al arrendatario lo invertido en las mismas. El contrato de arrendamiento terminó como consecuencia del proceso de expropiación forzosa incoado por la Autoridad. El contrato es la ley de las partes y habiendo éstas pactado de la menara antes transcrita, no hay nada que compensar al arrendatario. Aquí se produjo la terminación del contrato de manera legal, tal y como si hubiera expirado el término de vigencia. No venía, por tanto, obligado el arrendador a compensar al arrendatario, Guamaní Auto, por dichas mejoras, ni menos aún el Estado, que adquiere el bien libre de todo gravamen u obligación. Lo acordado por las partes sobre este particular es en última instancia lo que el propio Código Civil contempla para el caso de ausencia de un acuerdo en contrario, según analizado previamente. El arrendatario tendría con respecto a las mejoras el mismo derecho que el usufructuario. Puede realizar las' mejoras que considere convenientes, pero no tiene derecho a indemnización. No se cometieron dichos errores.
Guamaní Auto imputa en su recurso como quinto error que el TPI erró al concluir que no era de aplicación la doctrina de cobro de lo indebido en cuanto a las mensualidades pagadas al arrendador, efectuada ya la expropiación. Argumenta la peticionaria que la parte con interés Félix Schmidth cobró indebidamente por un término de cinco meses el canon de arrendamiento. El anáüsis del TPI sobre este extremo es absolutamente correcto. El arrendatario pagó por el uso del predio que ocupaba en los mismos términos que lo había venido haciendo en los meses precedentes. En vista de ello, no sufrió perjuicio alguno. Así las cosas, no poseía ni siquiera legitimación activa para formular tal pedido. Era más bien el Estado el que habría sufrido en este caso una pérdida como actual titular de la propiedad. A la misma vez se habría producido un enriquecimiento impropio por parte del arrendador al recibir un dinero que no le correspondía. Sin embargo, este mal se remedió, puesto que en la compensación final acordada, el Estado retuvo el equivalente a la suma recibida indebidamente por el arrendador de parte del arrendador por concepto del arrendamiento. Los hechos acaecidos no configuran de ninguna manera la doctrina de cobro de lo indebido
IV
A la luz de lo anterior, expedimos el recurso y se confirma la Sentencia recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones